**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>  v.<br><br>President and Fellows of Harvard College,<br><br>    Defendant. | Civ. No. 1:26-cv-10844<br><br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Harvard University is not complying with a federal investigation. It unlawfully has withheld from the United States Department of Justice ("Department") information necessary to determine whether Harvard, which has a recent history of racial discrimination, is continuing to discriminate in its admissions process.

In 2023, the Supreme Court held that Defendant President and Fellows of Harvard College ("Harvard") violated Title VI of the Civil Rights Act of 1964 by considering race in its undergraduate admissions process. *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181 (2023) ("*SFFA*"). Harvard used race as "a negative factor" and a "pernicious stereotype" and maintained an "obvious" "numerical commitment" to "[o]utright racial balancing." *Id.* at 218–23. The result was a significant "decrease in the number of Asian-Americans admitted to Harvard." *Id.* at 218.

In April 2025, the Department initiated compliance reviews of Harvard's undergraduate, medical-school, and law-school programs to determine whether Harvard continues to unlawfully discriminate against applicants for admission on the ground of race. But the Department is unable to determine whether Harvard is following the law.

Over ten months ago, the Department sought documents necessary to evaluate Harvard's compliance with Title VI, including applicant-level admissions data. Harvard has not provided this information. Harvard's refusal to cooperate with the Department's investigation violates federal law. As a recipient of Department funding, Harvard is required by federal regulations and its own contract with the Department to cooperate with the Department's compliance reviews. But at every turn, Harvard has thwarted the Department's efforts to investigate potential discrimination. It has slow-walked the pace of production and refused to provide pertinent documents relating to applicant-level admissions decisions. Harvard made its most recent production of admissions-related documents in May 2025. The repeatedly extended deadlines for document production have long passed.

"Eliminating racial discrimination means eliminating all of it." *Id.* at 206. The documents requested by the Department will help assess whether Harvard is complying with federal law or whether Harvard is defying Title VI and the Supreme Court's ruling in *SFFA*. The United States of America therefore brings this civil action solely to compel Harvard to produce documents relating to any consideration of race in admission. In this suit, the United States does not accuse Harvard of any discriminatory conduct, nor does it seek monetary damages or the revocation of federal funding.

## PARTIES

1.    Plaintiff is the United States of America. The United States provides significant financial assistance to Harvard.

2.    Defendant President and Fellows of Harvard College (also known as Harvard Corporation) is the legal entity encompassing Harvard University, a private university in Massachusetts, and its governing board.

3.      Harvard receives financial assistance from several federal agencies, including the Department.

4.      Harvard is a "program or activity" within the meaning of Title VI because it is "a college, university, or other postsecondary institution." 42 U.S.C. § 2000d-4a(2)(A).

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1345.

6.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) and (c)(2).

## FACTS

I.   *Harvard University*

7.      Harvard enrolls approximately 24,500 students and employs approximately 2,250 academic faculty.[1]

8.      Admission to Harvard is extremely competitive. Harvard College admits 4.2% of applicants into its undergraduate program.[2] Harvard Law School admits 9.2% of applicants.[3] Harvard Medical School admits 3.2% of applicants.[4]

9.      Harvard is the world's wealthiest university. It enjoys a $56.9 billion endowment and charges undergraduate students $86,926 per year for tuition, room and board, and other expenses.[5]

10.     Harvard receives very generous subsidies from American taxpayers. In 2024, Harvard received $686 million in federal research funding, which amounts to 11% of its annual

---

[1] https://www.harvard.edu/about/; https://oira.harvard.edu/factbook/fact-book-faculty-staff/
[2] https://college.harvard.edu/admissions/admissions-statistics
[3] https://hls.harvard.edu/jdadmissions/apply-to-harvard-law-school/jdapplicants/hls-profile-and-facts/
[4] https://hms.harvard.edu/about-hms/facts-figures
[5] https://www.harvard.edu/about/endowment/; https://registrar.fas.harvard.edu/tuition-and-fees

operating budget.[6]   Under its currently active grants, Harvard will receive over $2.6 billion of federal financial assistance, including approximately $650,000 from the Department.

11.     Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.

12.     As a "program or activity" that receives federal funding, Harvard must comply with Title VI.  42 U.S.C. § 2000d.  This means that Harvard may not discriminate against any students on the ground of race.

13.     Notwithstanding the requirements of Title VI and Harvard's then-existing contracts with the federal government, which prohibited discrimination on the basis of race, Harvard recently discriminated on the ground of race in its undergraduate admissions.  *See generally SFFA*.

II.     *Harvard's obligations as a recipient of the Department's Financial Assistance*

14.     Harvard currently is the recipient of a grant from the Department ("DOJ Grant"), entitled "Evaluating Processes and Outcomes of Housing Models for Victims of Human Trafficking." Ex. A at 1.  The award amount is $654,195.  The original budget period end date was December 31, 2025, *id.*, but the grant was renewed and now will expire on December 31, 2026, Ex. B at 1.

15.     The DOJ Grant is a legally binding contract between Harvard and the Department.

16.     The DOJ Grant informs Harvard that "recipients of federal financial assistance" must "give assurances that they will comply" with Title VI.  Ex. A at 3.

---

[6] https://www.harvardmagazine.com/2025/07/harvard-trump-research-cuts

17.    The DOJ Grant contains a provision requiring Harvard to "comply with all applicable requirements of 28 C.F.R. Part 42," which includes the Department's regulations implementing Title VI.  Ex. A at 13.

18.    The Department's Title VI regulations require "[e]very application for Federal financial assistance" to "contain or be accompanied by an assurance that the program will be conducted … in compliance with all requirements imposed by or pursuant to this subpart [Subpart C]."  28 C.F.R. § 42.105(a)(1).  The regulations further provide that "such assurance shall obligate the recipient for the period during which Federal financial assistance is extended pursuant to the application."  *Id.*

19.    Subpart C parrots Title VI and states, "No person in the United States shall, on the ground of race, color, or national origin be excluded from participation in, be denied the benefits of, or be otherwise subjected to discrimination under any program to which this subpart applies."  28 C.F.R. § 42.104(a).

20.    Subpart C contains additional prohibitions of "[s]pecific discriminatory actions."  28 C.F.R. § 42.104(b).  For example, recipients of federal funding may not discriminate "on the ground of race, color or national origin" in any of the following ways:

(i) Deny an individual any disposition, service, financial aid, or benefit provided under the program; (ii) Provide any disposition, service, financial aid, or benefit to an individual which is different, or is provided in a different manner, from that provided to others under the program; (iii) Subject an individual to segregation or separate treatment in any matter related to his receipt of any disposition, service, financial aid, or benefit under the program; (iv) Restrict an individual in any way in the enjoyment of any advantage or privilege enjoyed by others receiving any disposition, service, financial aid, or benefit under the program; (v) Treat an individual differently from others in determining whether he satisfies any admission, enrollment, quota, eligibility, membership, or other requirement or condition which individuals must meet … [or] (vi) Deny an individual an opportunity to participate in the program through the provision of services or otherwise or afford him an opportunity to do so which is different from that afforded others under the program.

5

*Id.*

21.    Subpart C requires recipients of federal funding to submit "timely, complete, and accurate compliance reports at such times, and in such form and containing such information, as the responsible Department official or his designee may determine to be necessary to enable him to ascertain whether the recipient has complied or is complying with this subpart."  28 C.F.R. § 42.106(b).

22.    Subpart C requires recipients of federal funding to "permit access by the responsible Department official or his designee during normal business hours to such of its books, records, accounts, and other sources of information, and its facilities, as may be pertinent to ascertain compliance with this subpart."  28 C.F.R. § 42.106(c).

23.    Subpart C allows the Department to "from time to time review the practices of recipients to determine whether they are complying with" Title VI and its implementing regulations.  28 C.F.R. § 42.107(a).

24.    The Department accordingly has the right to review Harvard's compliance with Title VI, and Harvard must permit the Department to access "pertinent" information as part of its review.

III.    *The Department launches an investigation of Harvard*

25.    In April 2025, the Department opened an investigation of Harvard's compliance with Title VI.

26.    On April 11, 2025, the Department sent Harvard College a letter "request[ing] information regarding [its] admission policies and compliance with the Supreme Court's decision in *Students for Fair Admissions*."  Ex. C at 1.  The Department requested that Harvard "certify that [it] does not use race as a factor in making admissions decisions" or "in awarding any scholarships,

financial assistance, or other benefits to current or prospective students." *Id.* The Department also asked Harvard College to produce documents to "support this certification," including "any and all relevant documents guiding your admissions policies and procedures" and "all admissions data for the past five academic years, including applicant test scores (SAT/ACT), GPA, extracurricular activities, essays, and admission outcomes, disaggregated by race and ethnicity." *Id.* The Department asked Harvard College to "send the requested information by April 25." *Id.* at 2.

27.     The Department sent Harvard Medical School a similar letter on the same day. The letter requested "any and all documents guiding medical school admissions and policies, including any documents related to the use or lack of use of race in evaluating applicants [and] all documents regarding any changes in policies or procedures following [*SFFA*]." Ex. D at 2. The Department also asked Harvard Medical School to produce "all admissions data for the past five academic years, including applicant test scores (MCAT), GPA, extracurricular activities, essays, and admission outcomes, disaggregated by race and ethnicity." *Id.* The Department reminded Harvard that it "signed contractual assurances agreeing to permit the Department to examine records and access other sources of information and facilities." *Id.* at 1–2.

28.     On April 18, 2025, the Department sent Harvard Law School a materially identical letter. The Department requested that Harvard Law School "certify that [it] does not use race as a factor in making admissions decisions" or "in awarding any scholarships, financial assistance, or other benefits to current or prospective students." Ex. E at 1. The Department also asked Harvard Law School to produce documents to "support this certification," including "any and all relevant documents guiding your admissions policies and procedures" and "all admissions data for the past five academic years, including applicant test scores (LSAT), GPA, extracurricular activities,

essays, and admission outcomes, disaggregated by race and ethnicity." *Id.* The Department asked Harvard Law School to "send the requested information by May 2." *Id.* at 2.

29.    The Department needs applicant-level data to determine whether Harvard is complying with Title VI and the Supreme Court's ruling in *SFFA*.

30.    Harvard asked the Department to extend all of these deadlines to May 16, 2025. The Department granted Harvard's request. Ex. F at 1.

IV.    *Harvard fails to cooperate with the Department's investigation of its admissions practices*

31.    On May 16, 2025, Harvard made its initial production of documents.

    a.  Harvard produced 292 pages of documents concerning Harvard College. Most of these documents were publicly available, such as documents regarding Harvard College's admissions process, financial aid policies, and statistical information on its student body.

    b.  Harvard produced 441 pages of documents concerning Harvard Law School. Most of these documents were publicly available, such as documents regarding Harvard Law School's admissions process and financial aid policies.

    c.  Harvard produced 183 pages of documents concerning Harvard Medical School. Most of these documents were publicly available, such as documents regarding Harvard Medical School's admissions process and aggregated statistical information about the student body.

32.    Harvard failed to produce many of the documents requested by the Department. Most notably, its May 16 production did not include applicant-level admissions data and documents.

33.    Harvard made its second production on May 30, two weeks after the May 16 deadline had passed.

a.  Harvard produced 106 pages of documents concerning Harvard College, including guidelines for admissions personnel and aggregated admissions data for years 2022–2024.

b.  Harvard produced 686 pages of documents concerning Harvard Law School, including guidelines for admissions personnel and aggregated enrollment data for years 2022–2024.

c.  Harvard produced 595 pages of documents concerning Harvard Medical School, including guidelines and instructional material provided to its admissions personnel for years 2022–2025, aggregated admissions data for years 2022-2024,[7] and an internal memo concerning its admissions policy in light of *SFFA*.

34.    Like the May 16 production, the May 30 production did not include the requested applicant-level admissions data and documents.

35.    On September 8, 2025, the Department informed Harvard that its production of documents relating to Harvard Medical School was insufficient.  Specifically, although the Department requested "any and all documents guiding medical school admissions policies and procedures, including any documents related to the use or lack of use of race in evaluating applicants" and "all admissions data for the past five academic years," Harvard provided only "aggregated admissions data," not the requested "individual-level applicant data." Ex. G at 1–2.

36.    The September 8 letter provided considerable details about the applicant-level admissions data the Department seeks.  It included a request for a "searchable electronic spreadsheet" containing individual-level data such as applicants' race and ethnicity, economic indicators, undergraduate class rank and GPA, MCAT scores, internal ratings, and "Holistic

---

[7] The aggregated admissions data includes demographic statistics of Harvard's admissions pools and incoming classes as a whole but does not include individual-level applicant data, such as each applicant's race, GPA, and MCAT score.

Review" factors and ratings.  Ex. G at 3–5.  The Department also requested that Harvard provide documents relating to admissions policies for Harvard Medical School, including correspondence related to race; ethnicity; diversity, equity, and inclusion ("DEI"); and *SFFA*.  *Id.* at 6–7.  The Department warned Harvard that failure to provide responsive documents could result in an enforcement action.  *Id.* at 2.

37.    On September 12, 2025, the Department sent a similar letter explaining that Harvard failed to produce individualized admissions data for applicants to Harvard College.  The letter provided considerable details about the applicant-level admissions data the Department seeks.  It included a request for a "searchable electronic spreadsheet" containing individual-level data such as applicants' race and ethnicity, racial and ethnic demography of their high schools and zip codes, grade point averages, recruited athlete status, employment history, financial aid offerings, interviewer ratings, and internal ratings.  Ex. H at 3–5.  The Department also requested that Harvard provide documents relating to admissions policies for Harvard College, including correspondence related to race, ethnicity, DEI, and *SFFA*.  *Id.* at 6–7. The Department again warned Harvard that failure to provide responsive documents could result in an enforcement action.  *Id.* at 2.

38.    The September 8 letter requested that Harvard produce responsive documents concerning Harvard Medical School by September 29.  Ex. G at 2.  The September 12 letter requested that Harvard produce responsive documents concerning Harvard College by October 6. Ex. H at 2.

39.    After discussions with Harvard's counsel, the Department agreed to one final extension of the deadline for production of Harvard Medical School documents until October 10, even though the United States first requested the admissions data nearly six months earlier.  Ex. I

at 1.  The Department stated that it would not "agree[] to any further extensions" and warned Harvard that failure to produce "all of the requested data by October 10th" would be viewed as a failure "to cooperate with the United States' compliance review."  *Id.*

40.    Harvard asked for an extension to October 17 to produce Harvard College data.  Ex. J at 1.  The Department agreed to extend the deadline for production of Harvard College documents to the same date as the Harvard Medical School deadline, October 10.  *Id.*

41.    Harvard did not produce the requested data by October 10, 2025.

42.    Harvard still has not produced any documents in response to the Department's September 8 and September 12 letters and has not provided any explanation for its failure to meet the October 10 (or October 17) deadlines.  Its most recent production on admissions practices was on May 30.

## FIRST CLAIM FOR RELIEF:
## TITLE VI

43.    The United States realleges and incorporates by reference the allegations set forth in all of the preceding paragraphs.

44.    The Department's Title VI regulations, 28 C.F.R. Subpart C, require Harvard to make "timely, complete, and accurate compliance reports" to the Department and "permit access" to relevant documents.

45.    Harvard is subject to Title VI because it has received, and continues to receive, federal financial assistance from the Department for its programs and activities.

46.    Harvard has violated 28 C.F.R. Subpart C because it has failed to make timely and complete document productions or otherwise permit the Department to access Harvard's applicant-level admissions data.

11

47.     The Department may use "any … means authorized by law" to secure Harvard's compliance with Title VI regulations, including 28 C.F.R. Subpart C.  42 U.S.C. § 2000d-1.

48.     Federal law authorizes the Department to bring "[a]ppropriate proceedings … to enforce any rights of the United States under any law of the United States" as necessary to "induce compliance" with 28 C.F.R. Subpart C.  28 C.F.R. § 42.108(a).

49.      The Department has "advised [Harvard] of the failure to comply" with its obligations pursuant to 42 U.S.C. § 2000d-1.  It repeatedly has explained that Harvard's document productions are insufficient, and it warned Harvard that failure to produce "all of the requested data by October 10th" would be viewed as a failure "to cooperate with the United States' compliance review."  Ex. I. at 1.

## SECOND CLAIM FOR RELIEF:
## BREACH OF CONTRACT

50.      The United States realleges and incorporates by reference the allegations set forth in all of the preceding paragraphs.

51.     The DOJ Grant is a legally binding contract between Harvard and the Department.

52.     Harvard agreed that, as required by 28 C.F.R. Subpart C, that it must make "timely, complete, and accurate compliance reports" to the Department and "permit access" to relevant documents.  Harvard further acknowledged that the Department may "review [its] practices."

53.     Harvard made only two document productions in response to the Department's April requests for documents regarding admissions data.  These productions were incomplete because they did not include applicant-level admissions data.  Harvard has not permitted the Department to access applicant-level admissions data.

54.    The Department made its initial requests for admissions data and documents over ten months ago.  The repeatedly extended production deadlines have long passed, and Harvard has not remedied the deficiencies in its document productions.

55.    By failing to make timely and complete document productions or otherwise permit the Department to access Harvard's applicant-level admissions data, Harvard has breached a material term of the DOJ Grant.

## PRAYER FOR RELIEF

The United States respectfully requests that the Court:

1.   Pursuant to 28 U.S.C. §§ 2201 and 2202, enter declaratory and injunctive relief as follows:

   a.   Declare that Harvard has violated Title VI, its implementing regulations, and related contractual assurances by failing to provide the United States with access to documents, records, and other sources of information pertaining to the investigation of alleged race discrimination;

   b.   Issue an injunction ordering Harvard's specific performance of the DOJ Grant, namely that Harvard provide the United States with access to the requested documents, records, and other sources of information;

   c.   Issue an injunction ordering Harvard to comply with Title VI and 28 C.F.R. Subpart C by providing the United States with access to the requested documents, records, and other sources of information;

   d.   Issue an injunction directing Harvard to comply with all future document requests that the Department makes pursuant to its authority under Title VI and 28 C.F.R. Subpart C.

2.  Retain jurisdiction to review any disputes that may arise over compliance with the Court's

order.

3.  Grant the United States such other and further relief as the interests of justice may require.

DATED:  February 13, 2026                    Respectfully submitted,

                                             HARMEET K. DHILLON
                                             Assistant Attorney General

                                             JESUS A. OSETE
                                             Principal Deputy Assistant Attorney General

                                             /s/  *Jeffrey Morrison*
                                             _____

                                             JEFFREY MORRISON (MO No. 44401)
                                             Acting Chief, Educational Opportunities Section
                                             RACHEL A. JANKOWSKI (DC No. 1686346)
                                             Acting Deputy Chief, Educational Opportunities
                                             Section
                                             BRIAN L. REPPER (VA No. 90254)
                                             JOSHUA R. ZUCKERMAN (DC No. 1724555)
                                             Trial Attorneys
                                             Civil Rights Division
                                             U.S. Department of Justice
                                             950 Pennsylvania Ave. NW
                                             Washington, DC 20530
                                             Telephone: (202) 514-3847
                                             Email: Jeffrey.Morrison@usdoj.gov