**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

UNITED STATES OF AMERICA,

      Plaintiff,

    v.

PRESIDENT AND FELLOWS OF
HARVARD COLLEGE,

      Defendant.

Case No. 1:26-cv-10844

**ANSWER**

This lawsuit, like other recent actions illegally targeting Harvard University ("Harvard" or "the University"), is based on improper motives and flouts the procedures required under Title VI of the Civil Rights Act of 1964 and corresponding federal regulations. The Department of Justice ("Department") couches this lawsuit as a down-the-middle demand for compliance with its information requests. But this suit actually seeks to transform routine negotiations over administrative document productions into an inappropriate and ill-conceived Title VI case. This case is just another page from the year-long retaliatory Government playbook, and it fails for the same reasons. *See, e.g.*, *President & Fellows of Harvard Coll. v. U.S. Dep't of Homeland Sec.*, 788 F. Supp. 3d 182, 186 (D. Mass. 2025); *President & Fellows of Harvard Coll. v. U.S. Dep't of Health & Hum. Servs.*, 798 F. Supp. 3d 77, 121–22 (D. Mass. 2025).

Harvard is committed to continuing to foster equal opportunity, combat discrimination, and ensure compliance with federal civil rights laws, including Title VI. As part of this commitment, Harvard quickly implemented procedures in the wake of the Supreme Court's decision in *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 600 U.S. 181 (2023) ("*SFFA*") to ensure compliance. As parties to the case, Harvard and SFFA conferred regarding

1

compliance with the Court's opinion and the appropriate remedy. SFFA was satisfied with Harvard's actions, commitments, and implementation, and the parties filed a Joint Motion for Entry of Final Judgment, which the district court granted. *See* Final Judgment, *SFFA*, 397 F. Supp. 3d 126 (D. Mass. Jan. 9, 2024) (No. 1:14-cv-14176), Dkt. No. 754. Based on these and other actions, the Department of Education expressed its view in a press release issued just last month that Harvard was "returning to admission based on merit" and had "seen substantial shifts in their admissions for the class of 2029," referencing a third-party report on post-*SFFA* admissions.[1] The lack of evidence that Harvard is violating the judgment in *SFFA* did not, however, deter the Department of Justice from pursuing this case as part of the Government's campaign of retaliation against Harvard.

On April 11, 2025, the Government sent Harvard University a letter that "explicitly conditioned [Harvard's] federal funding on" Harvard "surrender[ing] its First Amendment freedoms," including "overhaul[ing] its governance, hiring, and academic programs to comport with the government's ideology and prescribed viewpoint." *U.S. Dep't of Health & Hum. Servs.*, 798 F. Supp. 3d at 119, 120. That same day, the Department sent Harvard the first of a series of letters requesting an overbroad, personally intrusive, and unnecessary range of information about Harvard's admission criteria and practices before and after *SFFA* under the guise of a compliance "inquiry." Despite the Government's ongoing threats against it, Harvard engaged in good-faith negotiations with the Department and produced more than 2,000 pages of documents, as well as narrative responses describing Harvard's compliance with *SFFA* and Title VI. That information included aggregate demographic enrollment data spanning several years, as well as directives from

---

[1] U.S. Dep't of Educ., *Victories for Higher Education: Raising Academic Standards and Ensuring Admissions Transparency* (Mar. 27, 2026), https://www.ed.gov/about/news/press-release/victories-higher-education-raising-academic-standards-and-ensuring-admissions-transparency.

Harvard's in-house lawyers to admissions officers, training manuals, reader guidebooks, interviewer handbooks, and policy and procedure manuals, all demonstrating the robust steps Harvard has taken to comply with *SFFA*. These documents and data substantiated Harvard's explanations to the Department that, after *SFFA*, the fact of an applicant's race is *not* permitted to be considered in admissions decisions, and that Harvard has taken proactive and substantive measures to ensure that this is so. Harvard further confirmed that it remained committed to cooperating with the Department's review and open to further constructive dialogue, including potential production of further materials.

Contrary to the allegations in the Complaint, the negotiations between the parties did not end on October 10, 2025—nine days into a government shutdown that shuttered the Department for another month.[2] Instead, attorneys at the Department committed that they would notify Harvard when the appropriations lapse ended to allow the parties to reengage in negotiations. That outreach never happened. With no notice to Harvard or any further or final outreach over the course of the following months to attempt to resolve any existing disputes, the Department filed the present lawsuit on February 13, 2026, accusing Harvard of violating Title VI by "not complying with a federal investigation." Compl. at 1. The Department's abrupt decision to choose litigation over negotiation violates both the requirements of Title VI and Department regulations. The suit fails on that basis alone.

Compounding those flaws, the Department's case is another example of the Government's campaign to retaliate against Harvard for refusing to capitulate to the Government's unconstitutional demands and cede control of its viewpoints and academic decision-making. This

---

[2] *See* Defs' Mot. for a Stay of Deadline to File a Status Report in Light of Lapse of Appropriations, *U.S. Dep't of Health & Hum. Servs.*, 798 F. Supp. 3d 77 (D. Mass. Oct. 1, 2025) (No. 1:25-cv-11048), Dkt. No. 242 (requesting a stay of filing deadlines in the federal funding case due to the government shutdown's impact on the Department of Justice).

suit was filed less than two weeks after President Trump announced he wanted "nothing further to do, into the future, with Harvard"—an apparent reference (and end) to settlement discussions that the President has previously said were ongoing.[3] The Assistant Attorney General for the Civil Rights Division confirmed the retaliation, noting the Department "threw in the towel" and sued Harvard because Harvard was "not serious about settling with the United States."[4] And she has since explained that the Department is singling out Harvard to get its "bang for the buck" because Harvard is "disproportionately influential and global" and because Harvard "sued" and "is defiant."[5] The Department—by its months-long inaction and by its statements—has made clear that this case is not about compelling the production of documents. It is about using the judicial system in the Executive Branch's attempt to make an example of Harvard and generate headlines.

## **RESPONSES TO PLAINTIFF'S ALLEGATIONS**

Defendant, through undersigned counsel, answers the specific allegations in the Complaint in this case dated February 13, 2026 (ECF No. 1) as follows. The numbered paragraphs below correspond to the numbered paragraphs in the Complaint. Defendant denies each and every allegation in the Complaint that is not specifically admitted in this Answer.

**ANSWER TO INTRODUCTORY MATERIAL:** These unnumbered paragraphs contain the Plaintiff's characterization of this action and legal conclusions, to which no response is required. To the extent a response is deemed required, Defendant denies Plaintiff's characterization of this action and legal conclusions. Specifically, Defendant denies any allegation that it has engaged in

---

[3] Donald Trump (@realDonaldTrump), Truth Social (Feb. 2, 2026, at 23:20 ET), https://truthsocial.com/@realDonaldTrump/posts/116004776659519984; Steven Nelson, *Trump Says Harvard Will Run New Trade Schools as Part of Grant Deal: "Then Their Sins Are Forgiven"*, N.Y. Post (Sep. 30, 2025), https://nypost.com/2025/09/30/us-news/trump-announces-agreement-with-harvard-to-reverse-loss-of-2-4b-in-grants/.

[4] *Harmeet Dhillon: Harvard continues to discriminate against whites*, Newsmax (Feb. 25, 2026), https://www.youtube.com/watch?v=QmvoRJBC5bU.

[5] Tunku Varadarajan, *Harmeet Dhillon, Trump's Civil-Rights Enforcer in Action*, Wall St. J. (Mar. 27, 2026), https://www.wsj.com/opinion/harmeet-dhillon-trumps-civil-rights-enforcer-in-action-9e93b66d.

racial discrimination or refused to comply with a government investigation in violation of Title VI or its obligations as a federal grantee. Defendant avers that Plaintiff's characterization is an incomplete account of the negotiations between the parties and Harvard's compliance with the Supreme Court's decision in *SFFA*, as demonstrated by the documents that Harvard has produced to the Department of Justice.

## PARTIES

**ANSWER TO NO. 1:**  Admitted.

**ANSWER TO NO. 2:**  Denied except to admit that Defendant President and Fellows of Harvard College is the legal entity encompassing Harvard University, a private educational institution with its legal address in Massachusetts.

**ANSWER TO NO. 3:**  Admitted.

**ANSWER TO NO. 4:**  Paragraph 4 states a legal conclusion to which no response is required. To the extent a response is deemed required, Defendant refers the Court to the cited provision and denies any allegation inconsistent with its terms.

## JURISDICTION AND VENUE

**ANSWER TO NO. 5:**  Paragraph 5 states a legal conclusion to which no response is required. To the extent a response is deemed required, Defendant refers the Court to the cited provisions and denies any allegation inconsistent with their terms.

**ANSWER TO NO. 6:**  Paragraph 6 states a legal conclusion to which no response is required. To the extent a response is deemed required, Defendant refers the Court to the cited provisions and denies any allegation inconsistent with their terms.

## FACTS

**ANSWER TO NO. 7:** Denied except to admit that, for fall 2025, Harvard University enrolled approximately 24,317 students and employed approximately 2,352 faculty in various statuses.

**ANSWER TO NO. 8:** The first sentence is admitted. The second sentence is admitted to the extent it refers to the class of 2029. The third sentence is admitted to the extent it refers to the class of 2028. The fourth sentence is admitted to the extent that the Harvard Medical School admitted approximately 3% of applicants for the entering class in 2025. The allegations of this paragraph are otherwise denied.

**ANSWER TO NO. 9:** The first sentence of this paragraph is denied except to admit that Harvard maintains the largest endowment among private degree-granting post-secondary universities in the United States. Defendant avers that Harvard's endowment is a dedicated and permanent source of funding that maintains the teaching and research mission of the University. The second sentence of this paragraph is denied except to admit that Harvard's endowment in fiscal year 2025 was valued at $56.9 billion and that Harvard College's cost of attendance for 2025/2026 for billed tuition, housing and food, and other expenses is $86,926. Defendant avers that students are often charged significantly less than this amount after financial aid, with approximately 24% of parents paying nothing for their children to attend Harvard College.

**ANSWER TO NO. 10:** The first sentence is denied except to admit that Harvard receives federal grant funding through a competitive, merits-based process to perform work for the government, as well as other financial benefits from the government as a non-profit educational institution. The second sentence is admitted to the extent it refers to fiscal year 2024 and is otherwise denied. The third sentence is denied except to admit that, as of June 30, 2025, Harvard had approximately $1.4

billion in federally sponsored awards which were contractually awarded but for which costs had not yet been incurred and assigned to relevant awards.

**ANSWER TO NO. 11:**  Paragraph 11 states a legal conclusion to which no response is required. To the extent a response is deemed required, Defendant refers the Court to the cited provision and denies any allegation inconsistent with its terms.

**ANSWER TO NO. 12:**  Paragraph 12 states a legal conclusion to which no response is required. To the extent a response is deemed required, Defendant refers the Court to the cited provision and denies any allegation inconsistent with its terms.

**ANSWER TO NO. 13:**  Paragraph 13 states a legal conclusion to which no response is required. To the extent a response is deemed required, Defendant refers the Court to the cited decision and denies any allegation inconsistent with its terms. Defendant avers that the allegations of this paragraph ignore the extensive steps taken by Harvard in the three years since the decision in *SFFA*, as demonstrated by the documents produced to the Department of Justice. Defendant also avers that, in referencing the *SFFA* litigation "generally," the Complaint omits discussion of the entry of Final Judgment, in which Harvard affirmed to SFFA that it "shall not use the fact of an applicant's race as a factor in making admissions decisions;" "has updated its reading procedures and other admissions training materials to make clear that race may not be used as a factor in making admissions decisions;" and "will ensure that admissions readers do not have access to either (1) self-reported check-box race or ethnicity from the Common App or any similar application form or (2) aggregated data (meaning data about two or more applicants assembled in any form, physical or digital) reflecting applicants' self-reported race or ethnicity at any time until after the admissions process has concluded."

**ANSWER TO NO. 14:**  The first and second sentences are admitted. The third sentence is denied except to admit that the original budget period end date was December 31, 2025, and the grant was extended and will now expire on December 31, 2026.

**ANSWER TO NO. 15:**  Paragraph 15 states a legal conclusion to which no response is required. To the extent a response is deemed required, Defendant refers the Court to the referenced grant, identified as Exhibit A, in full and denies any allegation inconsistent with its terms or other applicable laws.

**ANSWER TO NO. 16:**  Paragraph 16 purports to describe the document identified as Exhibit A, which speaks for itself. Defendant refers the Court to the cited document in full and denies any allegation inconsistent with its terms or other applicable laws.

**ANSWER TO NO. 17:**  Paragraph 17 purports to describe the document identified as Exhibit A, which speaks for itself. Defendant refers the Court to the cited document in full and denies any allegation inconsistent with its terms or other applicable laws.

**ANSWER TO NO. 18:**  Paragraph 18 states a legal conclusion to which no response is required. To the extent a response is deemed required, Defendant refers the Court to the cited regulations in full and denies any allegation inconsistent with their terms.

**ANSWER TO NO. 19:**  Paragraph 19 states a legal conclusion to which no response is required. To the extent a response is deemed required, Defendant refers the Court to the cited regulations in full and denies any allegation inconsistent with their terms.

**ANSWER TO NO. 20:**  Paragraph 20 states a legal conclusion to which no response is required. To the extent a response is deemed required, Defendant refers the Court to the cited regulations in full and denies any allegation inconsistent with their terms.

**ANSWER TO NO. 21:**  Paragraph 21 states a legal conclusion to which no response is required. To the extent a response is deemed required, Defendant refers the Court to the cited regulations in full and denies any allegation inconsistent with their terms.

**ANSWER TO NO. 22:**  Paragraph 22 states a legal conclusion to which no response is required. To the extent a response is deemed required, Defendant refers the Court to the cited regulations in full and denies any allegation inconsistent with their terms.

**ANSWER TO NO. 23:**  Paragraph 23 states a legal conclusion to which no response is required. To the extent a response is deemed required, Defendant refers the Court to the cited regulations in full and denies any allegation inconsistent with their terms.

**ANSWER TO NO. 24:**  Paragraph 24 states a legal conclusion to which no response is required. To the extent a response is deemed required, Defendant refers the Court to the cited statute and denies any allegation inconsistent with its terms. Defendant specifically denies that Title VI and its implementing regulations entitle Plaintiff to obtain the information it seeks.

**ANSWER TO NO. 25:**  Paragraph 25 purports to describe the April 11, 2025, and April 18, 2025, letters from the Department of Justice to Harvard, which speak for themselves. Defendant avers that, in April 2025, the Government initiated an "onslaught against Harvard [that] was much more about promoting a governmental orthodoxy in violation of the First Amendment than about anything else." *U.S. Dep't of Health & Hum. Servs.*, 798 F. Supp. 3d at 122. Defendant refers the Court to the April 11 and 18 letters, identified as Exhibits C through E, and denies any allegation inconsistent with their terms.

**ANSWER TO NO. 26:**  Admitted that the Department of Justice sent a letter to Harvard University on April 11, 2025, that contained the quoted language. Defendant avers that, on the same day, the Government sent Harvard University another letter that "explicitly conditioned

[Harvard's] federal funding on" Harvard "surrender[ing] its First Amendment freedoms." *U.S. Dep't of Health & Hum. Servs.*, 798 F. Supp. 3d at 119, 120. The remainder of the paragraph purports to describe the April 11 letter, which speaks for itself. Defendant refers the Court to the cited letter, identified as Exhibit C, and denies any allegation inconsistent with its terms.

**ANSWER TO NO. 27:** Admitted that the Department of Justice sent a letter to Harvard University on April 11, 2025, that contained the quoted language. Defendant avers that, on the same day, the Government sent Harvard University another letter that "explicitly conditioned [Harvard's] federal funding on" Harvard "surrender[ing] its First Amendment freedoms." *U.S. Dep't of Health & Hum. Servs.*, 798 F. Supp. 3d at 119, 120. The remainder of the paragraph purports to describe the April 11 letter, which speaks for itself. Defendant refers the Court to the cited letter, identified as Exhibit D, and denies any allegation inconsistent with its terms.

**ANSWER TO NO. 28:** Admitted that the Department of Justice sent a letter to Harvard University on April 18, 2025, that contained the quoted language. Defendant avers that, one week earlier, on April 11, 2025, the Government sent Harvard University a letter that "explicitly conditioned [Harvard's] federal funding on" Harvard "surrender[ing] its First Amendment freedoms." *U.S. Dep't of Health & Hum. Servs.*, 798 F. Supp. 3d at 119, 120. Defendant further avers that on April 14, the President of Harvard University issued a public response rejecting the Government's demands because "[t]he University will not surrender its independence or relinquish its constitutional rights." *See also id.* at 95, 119. Defendant further avers that this response generated "an intensifying public pressure campaign, including from President Trump," *id.* at 96, as part of "a full court press against Harvard on many different fronts," including a freeze on Harvard's federal funding, *U.S. Dep't of Homeland Sec.* 788 F. Supp. 3d at 204. The remainder of the paragraph purports to describe the April 18 letter, which speaks for itself. Defendant refers the

10

Court to the cited letter, identified as Exhibit E, and denies any allegation inconsistent with its terms.

**ANSWER TO NO. 29:**  Denied.

**ANSWER TO NO. 30:**  Denied. Defendant avers that Harvard and the Department had previously agreed that the first rolling production would occur on May 16.

**ANSWER TO NO. 31:**  Admitted. Defendant avers that, reflecting the substance of the documents in the production referenced in paragraph 31, the cover letter provided to the Department as part of the production stated: "Harvard is committed to complying with all federal laws and regulations, including civil rights laws, in connection with admissions and financial aid. Harvard continues to comply with *Students for Fair Admissions (SFFA)*, particularly as a party to the final judgment in that case. In the wake of *SFFA* and before admitting the next class, Harvard took steps across the university to ensure compliance with the law." The letter also explained: "This production contains relevant policies and procedures for the College, HLS [Harvard Law School], and HMS [Harvard Medical School], as well as data relating to admissions and matriculated students at those schools . . . . Per our discussion on May 1 and related correspondence, we intend to make a further production of materials . . . on or before May 30."

**ANSWER TO NO. 31(a):**  The first sentence is admitted. The second sentence purports to describe the documents produced, which included responsive documents and information, including aggregate enrollment data regarding race and sex for each admission cycle from 2020–2024, as well as application materials, admissions criteria, and other admissions policy materials demonstrating Harvard College's compliance with Title VI and the Supreme Court's *SFFA* ruling. Defendant refers the Court to the cited documents and denies any allegation inconsistent with their terms.

11

**ANSWER TO NO. 31(b):** The first sentence is admitted. The second sentence purports to describe the documents produced, which included responsive documents and information, including aggregate enrollment data regarding race and sex for each admission cycle from 2020–2024, as well as application materials, admissions criteria, and other admissions policy materials demonstrating Harvard Law School's compliance with Title VI and the Supreme Court's *SFFA* ruling. Defendant refers the Court to the cited documents and denies any allegation inconsistent with their terms.

**ANSWER TO NO. 31(c):** The first sentence is admitted. The second sentence purports to describe the documents produced, which included responsive documents and information, including aggregate enrollment data regarding race and sex for each admission cycle from 2020–2024, as well as application materials, admissions criteria, and other admissions policy materials demonstrating Harvard Medical School's compliance with Title VI and the Supreme Court's *SFFA* ruling. Defendant refers the Court to the cited documents and denies any allegation inconsistent with their terms.

**ANSWER TO NO. 32:** The first sentence is denied. The second sentence is denied except to admit that Harvard did not include in its May 16 production private and sensitive individualized, applicant-level admissions information such as essays that are unnecessary and sought for an improper purpose.

**ANSWER TO NO. 33:** Denied except to admit that Harvard University made a second production of documents on May 30, which is two weeks after May 16. Defendant avers that it and the Department had previously agreed that the second rolling production would occur on May 30 "[p]er our discussion on May 1 and related correspondence." Defendant further avers that, reflecting the substance of the documents in the production referenced in paragraph 33, the cover

letter to the production stated: "Harvard is committed to complying with all federal laws and regulations, including civil rights laws, in connection with admissions and financial aid. Harvard continues to comply with *Students for Fair Admissions (SFFA)*, particularly as a party to the final judgment in that case. In the wake of *SFFA* and before admitting the next class, Harvard took steps to ensure compliance with the law. Further information regarding those steps and Harvard's commitment to compliance is contained in the enclosed Appendix."

**ANSWER TO NO. 33(a):** Admitted that Harvard University produced 106 pages of documents related to Harvard College on May 30. The remainder of the paragraph purports to describe the documents produced, which included confidential communications with admissions officers on compliance with *SFFA*, application reader handbooks, admissions interviewer guidebooks, and aggregate enrollment data by race/ethnicity for years 2022–2024 further demonstrating Harvard College's compliance with Title VI and the Supreme Court's *SFFA* decision. Defendant refers the Court to the cited documents and denies any allegation inconsistent with their terms.

**ANSWER TO NO. 33(b):** Admitted that Harvard University produced 686 pages of documents related to Harvard Law School on May 30. The remainder of the paragraph purports to describe the documents produced, which included confidential communications with admissions officers on compliance with *SFFA*, application reader training manuals and slideshows, presentations to faculty for admissions purposes, aggregate enrollment data by race/ethnicity for years 2022–2024, and internal admissions scoring rubrics further demonstrating Harvard Law School's compliance with Title VI and the Supreme Court's *SFFA* decision. Defendant refers the Court to the cited documents and denies any allegation inconsistent with their terms.

**ANSWER TO NO. 33(c):** Admitted that Harvard University produced 595 pages of documents related to Harvard Medical School on May 30. The remainder of the paragraph purports to describe

the documents produced, which included confidential communications with admissions officers on compliance with *SFFA*, guides for admissions personnel including instructions on complying with *SFFA*, instructions to admissions interviewers, and aggregate enrollment data by race/ethnicity for years 2022–2024, further demonstrating Harvard Medical School's compliance with Title VI and the Supreme Court's *SFFA* decision. Defendant refers the Court to the cited documents and denies any allegation inconsistent with their terms.

**ANSWER TO NO. 34:**  Denied except to admit that Harvard did not include in its May 30 production private and sensitive individualized, applicant-level admissions information such as essays that are unnecessary and sought for an improper purpose.

**ANSWER TO NO. 35:**  Admitted that the Department of Justice sent a letter to Harvard University on September 8, 2025, that contained the quoted language. The remainder of the paragraph purports to describe the letter, which speaks for itself. Defendant refers the Court to the cited letter, identified as Exhibit G, and denies any allegation inconsistent with its terms.

**ANSWER TO NO. 36:**  Paragraph 36 purports to describe the September 8, 2025, letter, which speaks for itself. Defendant refers the Court to the cited letter, identified as Exhibit G, and denies any allegation inconsistent with its terms.

**ANSWER TO NO. 37:**  Admitted that the Department of Justice sent a letter to Harvard University on September 12, 2025, that contained the quoted language. The remainder of the paragraph purports to describe the letter, which speaks for itself. Defendant refers the Court to the cited letter, identified as Exhibit H, and denies any allegation inconsistent with its terms.

**ANSWER TO NO. 38:**  Paragraph 38 purports to describe the September 8, 2025, and September 12, 2025, letters, which speak for themselves. Defendant refers the Court to the cited letters, identified as Exhibits G and H, and denies any allegation inconsistent with their terms.

**ANSWER TO NO. 39:**  The first sentence is denied. The remainder of the paragraph purports to describe the document identified as Exhibit I, which speaks for itself. Defendant refers the Court to the cited document and denies any allegation inconsistent with its terms.

**ANSWER TO NO. 40:**  Paragraph 40 purports to describe the document identified as Exhibit J, which speaks for itself. Defendant refers the Court to the cited document and denies any allegation inconsistent with its terms.

**ANSWER TO NO. 41:**  Denied except to admit that Harvard did not produce private and sensitive individualized, applicant-level information by October 10, 2025.

**ANSWER TO NO. 42:**  The first sentence is denied except to admit that having produced extensive material demonstrating Harvard's compliance with Title VI and the Supreme Court's *SFFA* decision, Harvard has not produced additional documents after September 8 that are related to the subject matter of the Department's September 8 and 12 letters. Defendant avers that the government shutdown began on October 1, 2025, and that negotiations with the Government about the date for additional productions continued past October 10, 2025. The second sentence is admitted.

## FIRST CLAIM FOR RELIEF:
## TITLE VI

**ANSWER TO NO. 43:**  Defendant hereby incorporates by reference its responses to the preceding paragraphs in the Complaint.

**ANSWER TO NO. 44:**  Paragraph 44 states a legal conclusion to which no response is required. To the extent a response is deemed required, Defendant refers the Court to the cited provision and denies any allegation inconsistent with its terms.

15

**ANSWER TO NO. 45:**  Paragraph 45 states a legal conclusion to which no response is required. To the extent a response is deemed required, Defendant refers the Court to the cited statute and denies any allegation inconsistent with its terms.

**ANSWER TO NO. 46:**  Denied.

**ANSWER TO NO. 47:**  Paragraph 47 states a legal conclusion to which no response is required. To the extent a response is deemed required, Defendant refers the Court to the cited provision and denies any allegation inconsistent with its terms.

**ANSWER TO NO. 48:**  Paragraph 48 states a legal conclusion to which no response is required. To the extent a response is deemed required, Defendant refers the Court to the cited provision and denies any allegation inconsistent with its terms.

**ANSWER TO NO. 49:**  The first sentence is denied. The second sentence purports to describe the document identified as Exhibit I, which speaks for itself. Defendant refers the Court to the cited document and denies any allegation inconsistent with its terms.

**SECOND CLAIM FOR RELIEF:**
**BREACH OF CONTRACT**

**ANSWER TO NO. 50:**  Defendant hereby incorporates by reference its responses to the preceding paragraphs in the Complaint.

**ANSWER TO NO. 51:**  Paragraph 51 states a legal conclusion to which no response is required. To the extent a response is deemed required, Defendant refers the Court to the referenced grant, identified as Exhibit A, in full and denies any allegation inconsistent with its terms or other applicable laws.

**ANSWER TO NO. 52:**  Paragraph 52 states a legal conclusion to which no response is required. To the extent a response is deemed required, Defendant refers the Court to the cited provision and

the referenced grant, identified as Exhibit A, and denies any allegation inconsistent with their terms.

**ANSWER TO NO. 53:** The first sentence is denied except to admit that Harvard made two productions of over 2,000 pages of documents to the Department of Justice in May 2025, including aggregate enrollment data, demonstrating its compliance with Title VI and the Supreme Court's *SFFA* decision. Defendant avers that the government shutdown began on October 1, 2025, and that negotiations with the Government about the date for additional productions continued past October 10, 2025. The second and third sentences are denied except to admit that Harvard has not produced individualized, applicant-level admissions information such as essays that are unnecessary and sought for an improper purpose.

**ANSWER TO NO. 54:** The first sentence is admitted to the extent that the Department of Justice conveyed its initial requests to Harvard in April 2025. Defendant avers that, in April 2025, the Government initiated an "onslaught against Harvard [that] was much more about promoting a governmental orthodoxy in violation of the First Amendment than about anything else." *U.S. Dep't of Health & Hum. Servs.*, 798 F. Supp. 3d at 122. The remainder of this sentence purports to describe the April 11, 2025, and April 18, 2025, letters from the Department to Harvard, which speak for themselves. Defendant refers the Court to the cited letters, identified as Exhibits C through E, and denies any allegation inconsistent with their terms. The second sentence is denied.

**ANSWER TO NO. 55:** Denied.

## PRAYER FOR RELIEF

The remaining allegations in the Complaint constitute Plaintiff's Prayer for Relief to which no response is required. To the extent a response is deemed required, Defendant denies that Plaintiff is entitled to its requested relief or any relief whatsoever.

17

## AFFIRMATIVE DEFENSES

Defendant asserts the following affirmative defenses on the basis of its current knowledge and information, reserving the right to withdraw any of these defenses or to assert additional defenses as further information becomes available.

### FIRST AFFIRMATIVE DEFENSE

Plaintiff's investigation and filing of this lawsuit were undertaken for improper and unlawful purposes in violation of Defendant's constitutional rights.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because Plaintiff failed to satisfy the procedures required by Title VI and its implementing regulations.

### THIRD AFFIRMATIVE DEFENSE

Under Title VI and its implementing regulations, Plaintiff is not entitled to obtain the information it seeks.

**WHEREFORE**, Defendant respectfully requests that the Court enter judgment in its favor and award it the costs of this action, together with attorneys' fees and such other relief as the Court may deem just and proper.

April 14, 2026

Stuart F. Delery*
Helgi C. Walker*
Eric R. Womack*
Eric Brooks*
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036-4504
sdelery@gibsondunn.com
hwalker@gibsondunn.com
ewomack@gibsondunn.com
ebrooks2@gibsondunn.com

Joshua S. Levy (BBO #563017)
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199
Joshua.Levy@ropesgray.com

Respectfully submitted,

PRESIDENT AND FELLOWS OF
HARVARD COLLEGE

By its attorneys,

*/s/ Steven P. Lehotsky*
Steven P. Lehotsky (BBO # 655908)
LEHOTSKY KELLER COHN LLP
200 Massachusetts Ave. NW, Suite 700
Washington, DC 20001
T: (512) 693-8350
F: (512) 727-4755
steve@lkcfirm.com

Robert K. Hur*
KING & SPALDING LLP
1700 Pennsylvania Ave. NW, Suite 900
Washington, DC 20006
rhur@kslaw.com

*Pro Hac Vice Applications Forthcoming*

19

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 14, 2026, I caused this document to be filed through the CM/ECF system, where it will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

*/s/ Steven P. Lehotsky*
Steven P. Lehotsky
