# EXHIBIT K



## UNITED STATES DEPARTMENT OF EDUCATION

### FEDERAL STUDENT AID
### SCHOOL ELIGIBILITY AND OVERSIGHT SERVICE GROUP

# PROGRAM PARTICIPATION AGREEMENT

**Effective Date of Approval:** The date on which this Agreement is signed on behalf of the Secretary of Education

**Approval Expiration Date:** June 30, 2030

**Reapplication Date:** March 31, 2030

**Name of Institution:** Harvard University

**Address of Institution:** Massachusetts Hall, Cambridge, MA 02138

**OPE ID Number:** 00215500

**Taxpayer Identification Number (TIN):** 042103580

> **The execution of this Agreement by the Institution and the Secretary is a prerequisite to the Institution's initial or continued participation in any Title IV, HEA Program.**

The postsecondary educational institution listed above, referred to hereafter as the "Institution," and the United States Secretary of Education, referred to hereafter as the "Secretary," agree that the Institution may participate in those student financial assistance programs authorized by Title IV of the Higher Education Act of 1965, as amended (Title IV, HEA Programs) indicated under this Agreement and further agrees that such participation is subject to the Institution's compliance with the terms and conditions set forth in this Agreement. As used in this Agreement, the term "Department" refers to the U.S. Department of Education.

## SCOPE OF COVERAGE

This Agreement applies to all locations of the Institution as stated on the most current ELIGIBILITY AND CERTIFICATION APPROVAL REPORT issued by the Department. This Agreement covers the Institution's eligibility to participate in each of the following listed Title IV, HEA programs, and incorporates by reference the regulations cited.

- **FEDERAL PELL GRANT PROGRAM,** 20 U.S.C. §§ 1070a *et seq.*; 34 C.F.R. Part 690.

- **FEDERAL DIRECT STUDENT LOAN PROGRAM,** 20 U.S.C. §§ 1087a *et seq.*; 34 C.F.R. Part 685.

Page 1 of 18

- **FEDERAL PERKINS LOAN PROGRAM,** 20 U.S.C. §§ 1087aa *et seq.*; 34 C.F.R. Part 674.

- **FEDERAL SUPPLEMENTAL EDUCATIONAL OPPORTUNITY GRANT PROGRAM,** 20 U.S.C. §§ 1070b *et seq.*; 34 C.F.R. Part 676.

- **FEDERAL WORK-STUDY PROGRAM,** 20 U.S.C. §§ 1087 *et seq.*; 34 C.F.R. Part 675.

- **TEACHER EDUCATION ASSISTANCE FOR COLLEGE AND HIGHER EDUCATION GRANT PROGRAM,** 20 U.S.C. §§ 1070g *et seq.*; 34 C.F.R. Part 686.

- **IRAQ AND AFGHANISTAN SERVICE GRANT,** §§ 1070h *et seq.*

# GENERAL TERMS AND CONDITIONS

1. The Institution understands and agrees that it is subject to and will comply with, as they become effective, the program statutes and implementing regulations for institutional eligibility as set forth in 34 C.F.R. Part 600 and for each Title IV, HEA program in which it participates, as well as the general provisions set forth in Part F and Part G of Title IV of the HEA, and the Student Assistance General Provisions regulations set forth in 34 C.F.R. Part 668.

   *The recitation of any portion of the statute or regulations in this Agreement does not limit the Institution's obligation to comply with other applicable statutes and regulations.*

2. a. The Institution certifies that on the date it signs this Agreement, it has adopted and implemented the drug prevention program described in 34 C.F.R. § 86.100.
   b. The Institution certifies that on the date it signs this Agreement, it is in compliance with the disclosure requirements of Section 485(f) of the HEA (Campus Security Policy and Campus Crime Statistics).

3. The Institution agrees to comply with --

   a. Title VI of the Civil Rights Act of 1964, as amended, and the implementing regulations, 34 C.F.R. Parts 100 and 101 (nondiscrimination on the basis of race, color or national origin);
   b. Title IX of the Education Amendments of 1972 and the implementing regulations, 34 C.F.R. Part 106 (nondiscrimination on the basis of sex);
   c. The Family Educational Rights and Privacy Act of 1974 and the implementing regulations, 34 C.F.R. Part 99;
   d. Section 504 of the Rehabilitation Act of 1973 and the implementing regulations, 34 C.F.R. Part 104 (nondiscrimination on the basis of disability); and
   e. The Age Discrimination Act of 1975 and the implementing regulations, 34 C.F.R. Part 110.
   f. The Standards for Safeguarding Customer Information, 16 C.F.R. Part 314, issued by the Federal Trade Commission (FTC), as required by the Gramm-Leach-Bliley (GLB) Act, P.L. 106-102. These Standards are intended to ensure the security and confidentiality of customer records and information. The Secretary considers any breach to the security of student records and information as a demonstration of a potential lack of administrative capability as stated in 34 C.F.R. § 668.16(c). Institutions are strongly encouraged to inform its students of any such breaches. Institutions are required, pursuant to the Student Aid Internet Gateway (SAIG) Agreement, to notify the Department of any suspected data breaches.

4. The Institution acknowledges that 34 C.F.R. Parts 602 and 668 require accrediting agencies, State regulatory bodies, and the Secretary to share information about institutions. The Institution agrees that the Secretary, any accrediting agency recognized by the Secretary, and any State regulatory body may share or report information to one another about the Institution without limitation.

5. The Institution acknowledges that the HEA prohibits the Secretary from recognizing the accreditation of any institution of higher education unless that institution agrees to submit any dispute involving an adverse action, such as the final denial, withdrawal, or termination of accreditation to arbitration prior to initiating any other legal action.

6. The Institution acknowledges that the Department is obligated to take appropriate measures in order to safeguard its systems and information as well as borrowers' personally identifiable information (PII) as required under Federal law, including but not limited to the requirements in the Privacy Act (*see* 5 U.S.C. § 552a(e)), E-Government Act of 2002 (*see* 44 U.S.C. § 3544), the Family Educational Rights and Privacy Act of 1974 (FERPA) (20 U.S.C. § 1232g; 34 C.F.R. Part 99), Federal Information Security Modernization Act (FISMA) of 2014 (44 U.S.C. § 3551, *et seq*.), and OMB Circular No. A-130. If the Institution has a cyber security incident that may negatively affect the Department's systems, the Department may terminate the Institution's access to the Department's systems. Access will be reconnected when the Department determines that the Institution has resolved any cyber security concerns and vulnerabilities to the Department's satisfaction.

7. The Institution acknowledges that any person who knowingly and willfully commits, or attempts to commit, any criminal action described in 20 U.S.C. § 1097, shall be subject to the penalties described therein.

# SELECTED PROVISIONS FROM
# GENERAL PROVISIONS REGULATIONS, 34 C.F.R. § 668.14

An institution's program participation agreement applies to each branch campus and other location of the institution that meets the applicable requirements of this part unless otherwise specified by the Secretary.
(b) By entering into a program participation agreement, an institution agrees that—
(1) It will comply with all statutory provisions of or applicable to Title IV of the HEA, all applicable regulatory provisions prescribed under that statutory authority, and all applicable special arrangements, agreements, and limitations entered into under the authority of statutes applicable to Title IV of the HEA, including the requirement that the institution will use funds it receives under any Title IV, HEA program and any interest or other earnings thereon, solely for the purposes specified in and in accordance with that program;
(2) As a fiduciary responsible for administering Federal funds, if the institution is permitted to request funds under a Title IV, HEA program advance payment method, the institution will time its requests for funds under the program to meet the institution's immediate Title IV, HEA program needs;
(3) It will not request from or charge any student a fee for processing or handling any application, form, or data required to determine a student's eligibility for, and amount of, Title IV, HEA program assistance;
(4) It will establish and maintain such administrative and fiscal procedures and records as may be necessary to ensure proper and efficient administration of funds received from the Secretary or from students under the Title IV, HEA programs, together with assurances that the institution will provide, upon request and in a timely manner, information relating to the administrative capability and financial responsibility of the institution to--
(i) The Secretary;
(ii) A guaranty agency, as defined in 34 C.F.R. Part 682, that guarantees loans made under the Federal

Stafford Loan and Federal PLUS programs for attendance at the institution or any of the institution's branch campuses or other locations;

(iii) The nationally recognized accrediting agency that accredits or preaccredits the institution or any of the institution's branch campuses, other locations, or educational programs;

(iv) The State agency that legally authorizes the institution and any branch campus or other location of the institution to provide postsecondary education; and

(v) In the case of a public postsecondary vocational educational institution that is approved by a State agency recognized for the approval of public postsecondary vocational education, that State agency;

(5) It will comply with the provisions of subpart L of this part relating to factors of financial responsibility;

(6) It will comply with the provisions of 34 C.F.R. § 668.16 relating to standards of administrative capability;

(7) It will submit reports to the Secretary and, in the case of an institution participating in the Federal Stafford Loan, Federal PLUS, or the Federal Perkins Loan Program, to holders of loans made to the institution's students under that program at such times and containing such information as the Secretary may reasonably require to carry out the purpose of the Title IV, HEA programs;

(8) It will not provide any statement to any student or certification to any lender in the case of an FFEL Program loan, or origination record to the Secretary in the case of a Direct Loan Program loan that qualifies the student or parent for a loan or loans in excess of the amount that the student or parent is eligible to borrow in accordance with sections 425(a), 428(a)(2), 428(b)(1)(A) and (B), 428B, 428H, and 455(a) of the HEA;

(9) It will comply with the requirements of Subpart D of this part concerning institutional and financial assistance information for students and prospective students;

(10) In the case of an institution that advertises job placement rates as a means of attracting students to enroll in the institution, the institution will make available to prospective students, at or before the time that those students apply for enrollment--

(i) The most recent available data concerning employment statistics, graduation statistics, and any other information necessary to substantiate the truthfulness of the advertisements; and

(ii) Relevant State licensing requirements of the State in which the institution is located for any job for which the course of instruction is designed to prepare such prospective students, as provided in 34 C.F.R. § 668.43(a)(5)(v);

(11) In the case of an institution participating in the FFEL Program, the institution will inform all eligible borrowers, as defined in 34 C.F.R. Part 682, enrolled in the institution about the availability and eligibility of those borrowers for State grant assistance from the State in which the institution is located, and will inform borrowers from another State of the source of further information concerning State grant assistance from that State;

(12) It will provide the certifications described in paragraph (c) of this section;

(13) In the case of an institution whose students receive financial assistance pursuant to section 484(d) of the HEA, the institution will make available to those students a program proven successful in assisting students in obtaining the recognized equivalent of a high school diploma;

(14) It will not deny any form of Federal financial aid to any eligible student solely on the grounds that the student is participating in a program of study abroad approved for credit by the institution;

(15) (i) Except as provided under paragraph (b)(15)(ii) of this section, the institution will use a default management plan approved by the Secretary with regard to its administration of the FFEL or Direct Loan programs, or both for at least the first two years of its participation in those programs, if the institution --

(A) Is participating in the FFEL or Direct Loan programs for the first time; or

(B) Is an institution that has undergone a change of ownership that results in a change in control and is participating in the FFEL or Direct Loan programs.

(ii) The institution does not have to use an approved default management plan if --

(A) The institution, including its main campus and any branch campus, does not have a cohort default rate in excess of 10 percent; and

(B) The owner of the institution does not own and has not owned any other institution that had a cohort default rate in excess of 10 percent while that owner owned the institution.

(16) For a proprietary institution, the institution will derive at least 10 percent of its revenues for each fiscal year from sources other than Federal funds, as provided in 34 C.F.R. § 668.28(a), or be subject to sanctions described in 34 C.F.R. § 668.28(c);

(17) The Secretary, guaranty agencies, and lenders as defined in 34 C.F.R. part 682, nationally recognized accrediting agencies, Federal agencies, State agencies recognized under 34 C.F.R. Part 603 for the approval of public postsecondary vocational education, State agencies that legally authorize institutions and branch campuses or other locations of institutions to provide postsecondary education, and State attorneys general have the authority to share with each other any information pertaining to the institution's eligibility for or participation in the Title IV, HEA programs or any information on fraud, abuse, or other violations of law;

(18) It will not knowingly --

(i) Employ in a capacity that involves the administration of the Title IV, HEA programs or the receipt of funds under those programs, an individual who has been:

(A) Convicted of, or has pled *nolo contendere* or guilty to, a crime involving the acquisition, use, or expenditure of Federal, State, or local government funds;

(B) Administratively or judicially determined to have committed fraud or any other material violation of law involving Federal, State, or local government funds;

(C) An owner, director, officer, or employee who exercised substantial control over an institution, or a direct or indirect parent entity of an institution, that owes a liability for a violation of a title IV, HEA program requirement and is not making payments in accordance with an agreement to repay that liability; or

(D) A ten-percent-or-higher equity owner, director, officer, principal, executive, or contractor at an institution in any year in which the institution incurred a loss of Federal funds in excess of 5 percent of the participating institution's annual title IV, HEA program funds; or

(ii) Contract with any institution, third-party servicer, individual, agency, or organization that has, or whose owners, officers or employees have--

(A) Been convicted of, or pled *nolo contendere* or guilty to, a crime involving the acquisition, use, or expenditure of Federal, State, or local government funds;

(B) Been administratively or judicially determined to have committed fraud or any other material violation of law involving Federal, State, or local government funds;

(C) Had its participation in the title IV programs terminated, certification revoked, or application for certification or recertification for participation in the title IV programs denied;

(D) Been an owner, director, officer, or employee who exercised substantial control over an institution, or a direct or indirect parent entity of an institution, that owes a liability for a violation of a title IV, HEA program requirement and is not making payments in accordance with an agreement to repay that liability; or

(E) Been a 10 percent-or-higher equity owner, director, officer, principal, executive, or contractor affiliated with another institution in any year in which the other institution incurred a loss of Federal funds in excess of 5 percent of the participating institution's annual title IV, HEA program funds;

(19) It will complete, in a timely manner and to the satisfaction of the Secretary, surveys conducted as a part of the Integrated Postsecondary Education Data System (IPEDS) or any other Federal collection effort, as designated by the Secretary, regarding data on postsecondary institutions;

(20) In the case of an institution that is co-educational and has an intercollegiate athletic program, it will comply with the provisions of 34 C.F.R.§ 668.48;

(21) It will not impose any penalty, including, but not limited to, the assessment of late fees, the denial of access to classes, libraries, or other institutional facilities, or the requirement that the student borrow additional funds for which interest or other charges are assessed, on any student because of the student's inability to meet his or her financial obligations to the institution as a result of the delayed disbursement of the proceeds of a Title IV, HEA program loan due to compliance with statutory and regulatory requirements of or applicable to the Title IV, HEA programs, or delays attributable to the institution;

(22) (i) It will not provide any commission, bonus, or other incentive payment based in any part, directly or indirectly, upon success in securing enrollments or the award of financial aid, to any person or entity who is engaged in any student recruitment or admission activity, or in making decisions regarding the award of Title IV, HEA program funds.(A) The restrictions in paragraph (b)(22) of this section do not apply to the recruitment of foreign students residing in foreign countries who are not eligible to receive Federal student assistance.

(B) For the purpose of paragraph (b)(22) of this section, an employee who receives multiple adjustments to compensation in a calendar year and is engaged in any student enrollment or admission activity or in making decisions regarding the award of Title IV, HEA program funds is considered to have received such

Docusign Envelope ID: 80D6D319-90F5-4C42-85B0-42CF1A4D60E7

adjustments based upon success in securing enrollments or the award of financial aid if those adjustments create compensation that is based in any part, directly or indirectly, upon success in securing enrollments or the award of financial aid.

(ii) Notwithstanding paragraph (b)(22)(i) of this section, eligible institutions, organizations that are contractors to eligible institutions, and other entities may make—

(A) Merit-based adjustments to employee compensation provided that such adjustments are not based in any part, directly or indirectly, upon success in securing enrollments or the award of financial aid; and

(B) Profit-sharing payments so long as such payments are not provided to any person or entity engaged in student recruitment or admission activity or in making decisions regarding the award of Title IV, HEA program funds.

(iii) As used in paragraph (b)(22) of this section,

(A) *Commission, bonus, or other incentive payment* means a sum of money or something of value, other than a fixed salary or wages, paid to or given to a person or an entity for services rendered.

(B) *Securing enrollments or the award of financial aid* means activities that a person or entity engages in at any point in time through completion of an educational program for the purpose of the admission or matriculation of students for any period of time or the award of financial aid to students.

(1) These activities include contact in any form with a prospective student, such as, but not limited to—contact through preadmission or advising activities, scheduling an appointment to visit the enrollment office or any other office of the institution, attendance at such an appointment, or involvement in a prospective student's signing of an enrollment agreement or financial aid application.

(2) These activities do not include making a payment to a third party for the provision of student contact information for prospective students provided that such payment is not based on—

(i) Any additional conduct or action by the third party or the prospective students, such as participation in preadmission or advising activities, scheduling an appointment to visit the enrollment office or any other office of the institution or attendance at such an appointment, or the signing, or being involved in the signing, of a prospective student's enrollment agreement or financial aid application; or

(ii) The number of students (calculated at any point in time of an educational program) who apply for enrollment, are awarded financial aid, or are enrolled for any period of time, including through completion of an educational program.

(C) *Entity or person engaged in any student recruitment or admission activity or in making decisions about the award of financial aid* means—

(1) With respect to an entity engaged in any student recruitment or admission activity or in making decisions about the award of financial aid, any institution or organization that undertakes the recruiting or the admitting of students or that makes decisions about and awards Title IV, HEA program funds; and

(2) With respect to a person engaged in any student recruitment or admission activity or in making decisions about the award of financial aid, any employee who undertakes recruiting or admitting of students or who makes decisions about and awards Title IV, HEA program funds, and any higher level employee with responsibility for recruitment or admission of students, or making decisions about awarding Title IV, HEA program funds.

(D) *Enrollment* means the admission or matriculation of a student into an eligible institution.

(23) It will meet the requirements established pursuant to Part H of Title IV of the HEA by the Secretary and nationally recognized accrediting agencies;

(24) It will comply with the requirements of 34 C.F.R. § 668.22;

(25) It is liable for all--

(i) Improperly spent or unspent funds received under the Title IV, HEA programs, including any funds administered by a third-party servicer; and

(ii) Returns of Title IV, HEA program funds that the institution or its servicer may be required to make;

(26) If an educational program offered by the institution on or after July 1, 2024, is required to prepare a student for gainful employment in a recognized occupation, the institution must—

(i) Establish the need for the training for the student to obtain employment in the recognized occupation for which the program prepares the student; and

(ii) Demonstrate a reasonable relationship between the length of the program and the entry level requirements for the recognized occupation for which the program prepares the student by limiting the number of hours in

the program to the greater of—

(A) The required minimum number of clock hours, credit hours, or the equivalent required for training in the recognized occupation for which the program prepares the student, as established by the State in which the institution is located, if the State has established such a requirement or as established by any Federal agency; or

(B) Another State's required minimum number of clock hours, credit hours, or the equivalent required for training in the recognized occupation for which the program prepares the student, if the institution documents, with substantiation by a certified public accountant who prepares the institution's compliance audit report as required under §668.23 that—

*(1)* A majority of students resided in that State while enrolled in the program during the most recently completed award year;

*(2)* A majority of students who completed the program in the most recently completed award year were employed in that State; or

*(3)* The other State is part of the same metropolitan statistical area as the institution's home State and a majority of students, upon enrollment in the program during the most recently completed award year, stated in writing that they intended to work in that other State; and

(iii) Notwithstanding paragraph (a)(26)(ii) of this section, the program length limitation does not apply for occupations where the State entry level requirements include the completion of an associate or higher-level degree; or where the program is delivered entirely through distance education or correspondence courses;

(27) In the case of an institution participating in a Title IV, HEA loan program, the institution -- (i) Will develop, publish, administer, and enforce a code of conduct with respect to loans made, insured or guaranteed under the Title IV, HEA loan programs in accordance with 34 C.F.R. § 601.21; and (ii) Must inform its officers, employees, and agents with responsibilities with respect to loans made, insured or guaranteed under the Title IV, HEA loan programs annually of the provisions of the code required under paragraph (b)(27) of this section;

(28) For any year in which the institution has a preferred lender arrangement (as defined in 34 C.F.R. § 601.2(b)), it will at least annually compile, maintain, and make available for students attending the institution, and the families of such students, a list in print or other medium, of the specific lenders for loans made, insured, or guaranteed under Title IV of the HEA or private education loans that the institution recommends, promotes, or endorses in accordance with such preferred lender arrangement. In making such a list, the institution must comply with the requirements in 34 C.F.R. § 682.212(h) and 34 C.F.R. § 601.10;

(29) (i) It will, upon the request of an enrolled or admitted student who is an applicant for a private education loan (as defined in 34 C.F.R. § 601.2(b)), provide to the applicant the self-certification form required under 34 C.F.R. § 601.11(d) and the information required to complete the form, to the extent the institution possesses such information, including -- (A) The applicant's cost of attendance at the institution, as determined by the institution under part F of Title IV of the HEA;

(B) The applicant's estimated financial assistance, including amounts of financial assistance used to replace the expected family contribution as determined by the institution in accordance with Title IV, for students who have completed the Free Application for Federal Student Aid; and (C) The difference between the amounts under paragraphs (b)(29)(i)(A) and (29)(i)(B) of this section, as applicable. (ii) It will, upon the request of the applicant, discuss with the applicant the availability of Federal, State, and institutional student financial aid;

(30) The institution --

(i) Has developed and implemented written plans to effectively combat the unauthorized distribution of copyrighted material by users of the institution's network, without unduly interfering with educational and research use of the network, that include --

(A) The use of one or more technology-based deterrents;

(B) Mechanisms for educating and informing its community about appropriate versus inappropriate use of copyrighted material, including that described in 34 C.F.R. § 668.43(a)(10);

(C) Procedures for handling unauthorized distribution of copyrighted material, including disciplinary procedures; and

(D) Procedures for periodically reviewing the effectiveness of the plans to combat the unauthorized distribution of copyrighted materials by users of the institution's network using relevant assessment criteria.

No particular technology measures are favored or required for inclusion in an institution's plans, and each institution retains the authority to determine what its particular plans for compliance with paragraph (b)(30) of this section will be, including those that prohibit content monitoring; and

(ii) Will, in consultation with the chief technology officer or other designated officer of the institution--

(A) Periodically review the legal alternatives for downloading or otherwise acquiring copyrighted material;

(B) Make available the results of the review in paragraph (b)(30)(ii)(A) of this section to its students through a Web site or other means; and

(C) To the extent practicable, offer legal alternatives for downloading or otherwise acquiring copyrighted material, as determined by the institution;

(31) The institution will submit a teach-out plan to its accrediting agency in compliance with 34 C.F.R. § 602.24(c) and the standards of the institution's accrediting agency. The institution will update its teach-out plan upon the occurrence of any of the following events:

(i) The Secretary initiates the limitation, suspension, or termination of the participation of an institution in any Title IV, HEA program under 34 C.F.R. § 600.41 or subpart G of this part or initiates an emergency action under 34 C.F.R. § 668.83.

(ii) The institution's accrediting agency acts to withdraw, terminate, or suspend the accreditation or preaccreditation of the institution.

(iii) The institution's State licensing or authorizing agency revokes the institution's license or legal authorization to provide an educational program.

(iv) The institution intends to close a location that provides 100 percent of at least one program.

(v) The institution otherwise intends to cease operations;

(32) In each State in which: the institution is located; students enrolled by the institution in distance education or correspondence courses are located, as determined at the time of initial enrollment in accordance with 34 CFR 600.9(c)(2); or for the purposes of paragraphs (b)(32)(i) and (ii) of this section, each student who enrolls in a program on or after July 1, 2024, and attests that they intend to seek employment, the institution must determine that each program eligible for title IV, HEA program funds—

(i) Is programmatically accredited if the State or a Federal agency requires such accreditation, including as a condition for employment in the occupation for which the program prepares the student, or is programmatically pre-accredited when programmatic pre-accreditation is sufficient according to the State or Federal agency;

(ii) Satisfies the applicable educational requirements for professional licensure or certification requirements in the State so that a student who enrolls in the program, and seeks employment in that State after completing the program, qualifies to take any licensure or certification exam that is needed for the student to practice or find employment in an occupation that the program prepares students to enter; and

(iii) Complies with all State laws related to closure, including record retention, teach-out plans or agreements, and tuition recovery funds or surety bonds;

(33) It will not withhold official transcripts or take any other negative action against a student related to a balance owed by the student that resulted from an error in the institution's administration of the title IV, HEA programs, or any fraud or misconduct by the institution or its personnel;

(34) Upon request by a student, the institution will provide an official transcript that includes all the credit or clock hours for payment periods—

(i) In which the student received title IV, HEA funds; and

(ii) For which all institutional charges were paid or included in an agreement to pay at the time the request is made; and

(35) It will not maintain policies and procedures to encourage, or that condition institutional aid or other student benefits in a manner that induces, a student to limit the amount of Federal student aid, including Federal loan funds, that the student receives, except that the institution may provide a scholarship on the condition that a student forego borrowing if the amount of the scholarship provided is equal to or greater than the amount of Federal loan funds that the student agrees not to borrow.

(c) In order to participate in any Title IV, HEA program (other than the LEAP and NEISP programs), the institution must certify that it--

(1) Has in operation a drug abuse prevention program that the institution has determined to be accessible to any officer, employee, or student at the institution; and

(2) (i) Has established a campus security policy in accordance with section 485(f) of the HEA; and

(ii) Has complied with the disclosure requirements of 34 C.F.R. § 668.47 as required by section 485(f) of the HEA.

(d) (1) The institution, if located in a State to which section 4(b) of the National Voter Registration Act (42 U.S.C. 1973gg-2(b)) does not apply, will make a good faith effort to distribute a mail voter registration form, requested and received from the State, to each student enrolled in a degree or certificate program and physically in attendance at the institution, and to make those forms widely available to students at the institution.

(2) The institution must request the forms from the State 120 days prior to the deadline for registering to vote within the State.  If an institution has not received a sufficient quantity of forms to fulfill this section from the State within 60 days prior to the deadline for registering to vote in the State, the institution is not liable for not meeting the requirements of this section during that election year.

(3) This paragraph applies to elections as defined in Section 301(1) of the Federal Election Campaign Act of 1971 (2 U.S.C. 431(1)), and includes the election for Governor or other chief executive within such State.

…

(h) (1) A program participation agreement becomes effective on the date that the Secretary signs the agreement.

(2) A new program participation agreement supersedes any prior program participation agreement between the Secretary and the institution.

(i) (1) Except as provided in paragraphs (g) and (h) of this section, the Secretary terminates a program participation agreement through the proceedings in subpart G of this part.   (2) An institution may terminate a program participation agreement.

(3) If the Secretary or the institution terminates a program participation agreement under paragraph (f) of this section, the Secretary establishes the termination date.

(j) An institution's program participation agreement automatically expires on the date that--

(l) The institution changes ownership that results in a change in control as determined by the Secretary under 34 C.F.R. Part 600; or

(2) The institution's participation ends under the provisions of 34 C.F.R. § 668.26(a)(1), (2), (4), or (7).

(k) An institution's program participation agreement no longer applies to or covers a location of the institution as of the date on which that location ceases to be a part of the participating institution.

## WILLIAM D. FORD FEDERAL DIRECT LOAN PROGRAM

If an institution participates in the William D. Ford Federal Direct Loan (Direct Loan) Program, the institution and its representatives shall comply with, as they become effective, the statute, guidelines, and regulations governing the Title IV, Part D, William D. Ford Federal Direct Loan Program as required by 20 U.S.C. §§ 1087a *et seq.* (Part C) and 34 C.F.R. Part 685.

The institution will:

1. Provide for the establishment and maintenance of a Direct Loan Program at the institution under which the institution will:

   Identify eligible students who seek student financial assistance in accordance with Section 484 of the HEA.

   Estimate the need of students as required under Title IV, Part F of the HEA.

   Provide a certification statement of eligibility for students to receive loans that will not exceed the annual or aggregate limits, except the institution may exercise its authority, under exceptional

circumstances identified by the Secretary, to refuse to certify a statement that permits a student to receive a loan, or certify a loan amount that is less than the student's determination of need, if the reason for such action is documented and provided in written form to a student.

Establish a schedule for disbursement of loan proceeds to meet the requirements of Section 428G of the HEA.

Reconcile institutional records with receipt and disbursement records on at least a monthly basis.

Provide timely and accurate information to the Secretary concerning 1) the status of students while in attendance, 2) any new information pertaining to student or parent borrowers of which the institution becomes aware after the student leaves the institution, and 3) student eligibility and need for Federal funds under Title IV, Part D of the HEA, at such times and in such manner as prescribed by the Secretary.

2. Comply with requirements established by the Secretary relating to student loan information with respect to the Direct Loan Program.

3. Implement a quality assurance system, as established by the Secretary and developed in consultation with institutions of higher education, to ensure that the institution is complying with program requirements and meeting program objectives.

4. Not charge any fees of any kind, regardless of how they are described, to student or parent borrowers for loan application, or origination activities (if applicable), or the provision and processing of any information necessary for a student or parent to receive a loan under Title IV, Part D of the HEA.

5. Comply with the provisions regarding student claims and disputes of 34 C.F.R. § 685.300(d) (borrower defense claims in an internal dispute process), (e) (class action bans), (f) (pre-dispute arbitration agreements), (g) (submission of arbitral records), (h) (submission of judicial records), and (i) (definitions).

6. Originate loans to eligible students and parents in accordance with the requirements of Title IV, Part D of the HEA and use funds advanced to it solely for that purpose.

7. Provide that the note or evidence of obligation of the loan shall be the property of the Secretary.

8. Comply with other provisions that the Secretary determines are necessary to protect the interests of the United States and to promote the purposes of Title IV, Part D of the HEA.

9. Accept responsibility and financial liability stemming from its failure to perform its functions under this Program Participation Agreement.

10. Accept responsibility and financial liability stemming from losses incurred by the Secretary for repayment of amounts discharged by the Secretary pursuant to 34 C.F.R. §§ 685.206, 685.214, 685.215, 685.216, and 685.222.

## CERTIFICATIONS REQUIRED FROM INSTITUTIONS

The Institution should refer to the regulations cited below. Signature on this Agreement provides for compliance with, as they become effective, the certification requirements under 34 C.F.R. Part 82, "New Restrictions on Lobbying," 34 C.F.R. Part 84, "Governmentwide Requirements for Drug-Free Workplace

Docusign Envelope ID: 80D6D319-90F5-4C42-85B0-42CF1A4D69E7

(Financial Assistance), 2 C.F.R. Part 180, Subpart C, "OMB Guidelines to Agencies on Governmentwide Debarment and Suspension (Nonprocurement)," 2 C.F.R. Part 3485, "Nonprocurement Debarment and Suspension," and 34 C.F.R. Part 86, "Drug and Alcohol Abuse Prevention." Breach of any of these certifications constitutes a breach of this Agreement.

# PART CERTIFICATION REGARDING LOBBYING; DRUG-FREE WORKPLACE; 1    DEBARMENT, SUSPENSION AND OTHER RESPONSIBILITY MATTERS; AND DRUG AND ALCOHOL ABUSE PREVENTION

## *1. Lobbying*

As required by Section 1352, Title 31 of the U.S. Code, and implemented at 34 C.F.R. Part 82, for persons entering into a Federal contract, grant or cooperative agreement over $100,000, as defined at 34 C.F.R. Part 82, §§ 82.105 and 82.110, the undersigned certifies, to the best of his or her knowledge and belief, that:

(1) No Federal appropriated funds have been paid or will be paid, by or on behalf of the undersigned, to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with the awarding of any Federal contract, the making of any Federal grant, the making of any Federal loan, the entering into of any cooperative agreement, and the extension, continuation, renewal, amendment, or modification of any Federal contract, grant, loan, or cooperative agreement.

(2) If any funds other than Federal appropriated funds have been paid or will be paid to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with this Federal contract, grant, loan, or cooperative agreement, the undersigned shall complete and submit Standard Form - LLL, "Disclosure Form to Report Lobbying," in accordance with its instructions.

(3) The Institution shall require that the language of this certification be included in the award documents for all subawards at all tiers (including subcontracts, subgrants and contracts under grants, loans, and cooperative agreements) and that all subrecipients shall certify and disclose accordingly.

## *2a. Drug-Free Workplace (Grantees Other Than Individuals)*

As required by the Drug-Free Workplace Act of 1988, and implemented at 34 C.F.R. Part 84, Subpart B, for recipients other than individuals, as defined at 34 C.F.R. Part 84, §§ 84.200 through 84.230 - The Institution certifies that it will or will continue to provide a drug-free workplace by:

(a) Publishing a drug-free workplace statement notifying employees that the unlawful manufacture, distribution, dispensing, possession, or use of a controlled substance is prohibited in the grantee's workplace and specifying the actions that will be taken against employees for violation of such prohibition;

(b) Establishing an on-going drug-free awareness program to inform employees about

(1) The dangers of drug abuse in the workplace;

(2) The Institution's policy of maintaining a drug-free workplace;

(3) Any available drug counseling, rehabilitation, and employee assistance programs; and

(4) The penalties that may be imposed upon employees for drug abuse violations occurring in the workplace;

(c) Making it a requirement that each employee to be engaged in the performance of the grant be given a copy of the statement required by paragraph (a)

(d) Notifying the employee in the statement required by paragraph (a) that, as a condition of employment under the grant, the employee will -

(1) Abide by the terms of the statement, and

(2) Notify the employer in writing if he or she is convicted for a violation of a criminal drug statute occurring in the workplace no more than five calendar days after such conviction;

(e) Notifying the agency, in writing, within 10 calendar days after receiving notice under this subparagraph (d)(2) from an employee or otherwise receiving actual notice of such conviction. Employers of convicted employees must provide notice, including position title, to: Director, Grants and Contracts Service, U.S. Department of Education, 400 Maryland Avenue, S.W., Washington, DC 20202. Notice shall include the identification number(s) of each affected grant;

(f) Taking one of the following actions, within 30 calendar days of receiving notice under subparagraph (d)(2), with respect to any employee who is so convicted -

(1) Taking appropriate personnel action against such an employee, up to and including termination, consistent with the requirements of the Rehabilitation Act of 1972, as amended; or

(2) Requiring such employee to participate satisfactorily in a drug abuse assistance or rehabilitation program approved for such purposes by a Federal, State, or local health, law enforcement, or other appropriate agency;

(g) Making a good faith effort to continue to maintain a drug-free workplace through implementation of paragraphs (a), (b), (c), (d), (e), and (f).

### *2b. Drug-Free Workplace (Grantees Who Are Individuals)*

As required by the Drug-Free Workplace Act of 1988, and implemented at 34 C.F.R. Part 84, Subpart C, for recipients who are individuals, as defined at 34 C.F.R. Part 84, § 84.300 -

1. As a condition of the grant, the Institution certifies that it will not engage in the unlawful manufacture, distribution, dispensing, possession, or use of a controlled substance in conducting any activity related to the award; and

2. If any officer or owner of the Institution is convicted of a criminal drug offense resulting from a violation occurring during the conduct of any award activity, the Institution will report the conviction, in writing,

within 10 calendar days of the conviction, to: Director, Grants and Contracts Service, U.S. Department of Education, 400 Maryland Avenue, S.W., Washington, DC 20202. Notice shall include the identification number(s) of each affected grant.

### 3. Debarment, Suspension, and Other Responsibility Matters

As required by Executive Order 12549, Debarment and Suspension, and implemented at 2 C.F.R. Part 180, for prospective participants in primary covered transactions as defined at 2 C.F.R. Part 180, §§ 180.200 and 180.210, the Institution certifies that it and its principals (per 2 C.F.R. § 180.335):

(a) Are not presently debarred, suspended, proposed for debarment, voluntarily excluded, or disqualified;
(b) Have not within a three-year period preceding this application been convicted of or had a civil judgment rendered against them for commission of fraud or a criminal offense in connection with obtaining, attempting to obtain, or performing a public or private agreement or transaction; violation of Federal or State antitrust statutes, including those proscribing price fixing between competitors, allocation of customers between competitors, and bid rigging; commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, tax evasion, receiving stolen property, making false claims, or obstruction of justice; or commission of any other offense indicating a lack of business integrity or business honesty that seriously and directly affects their present responsibility.
(c) Are not presently indicted for or otherwise criminally or civilly charged by a governmental entity (Federal, State, or local) with commission of any of the offenses enumerated in paragraph (b) of this certification; and
(d) Have not within a three-year period preceding this application had one or more public transactions (Federal, State, or local) terminated for cause or default.

### 4. Drug and Alcohol Abuse Prevention

As required by the Drug-Free Schools and Communities Act Amendments of 1989, which added section 1213 to the Higher Education Act, and implemented at 34 C.F.R. Part 86, the undersigned Institution certifies that it has adopted and implemented a drug prevention program for its students and employees that, at a minimum, includes--

1. The annual distribution in writing to each employee, and to each student who is taking one or more classes for any kind of academic credit except for continuing education units, regardless of the length of the student's program of study, of:

   - Standards of conduct that clearly prohibit, at a minimum, the unlawful possession, use, or distribution of illicit drugs and alcohol by students and employees on its property or as part of any of its activities.
   - A description of the applicable legal sanctions under local, State, or Federal law for the unlawful possession or distribution of illicit drugs and alcohol.
   - A description of the health risks associated with the use of illicit drugs and the abuse of alcohol.
   - A description of any drug or alcohol counseling, treatment, or rehabilitation or re-entry programs that are available to employees or students.

   A clear statement that the Institution will impose disciplinary sanctions on students and employees (consistent with local, State, and Federal law), and a description of those sanctions, up to and including expulsion or termination of employment and referral for prosecution, for violation of the standards of conduct. A disciplinary sanction may include the completion of an appropriate rehabilitation program.

2. A biennial review by the Institution of its program to:

   - Determine its effectiveness and implement changes to the program if they are needed.
   - Ensure that its disciplinary sanctions are consistently enforced.

| PART 2 | CERTIFICATION REGARDING DEBARMENT, SUSPENSION, DISQUALIFICATION, AND VOLUNTARY EXCLUSION -- LOWER TIER COVERED TRANSACTIONS |
|---|---|

The Institution is to obtain the signatures of Lower Tier Contractors on reproduced copies of the certification below, and retain the signed certification(s) in the Institution's files.

---

**CERTIFICATION BY LOWER TIER CONTRACTOR**
**(Before Completing Certification, Read Instructions for This Part, below)**

---

(1) The prospective lower tier participant certifies by submission of this proposal, that neither it nor its principals are presently debarred, suspended, proposed for debarment, voluntarily excluded, or disqualified from participation in this transaction by any Federal Department or Agency.

(2) Where the prospective lower tier participant is unable to certify to any of the statements in this certification, such prospective participant shall attach an explanation to this proposal.

| | |
|---|---|
| _____ | _____ |
| Name of Lower Tier Organization | PR/Award Number or Project Name |
| _____ | _____ |
| Name of Authorized Representative | Title of Authorized Representative |
| _____ | _____ |
| Signature of Authorized Representative | Date |

1. By signing and submitting this proposal, the prospective lower tier participant is providing the certification set out below.

2. The certification in this clause is a material representation of fact upon which reliance was placed when this transaction was entered into. If it is later determined that the prospective lower tier participant knowingly rendered an erroneous certification, in addition to other remedies available to the Federal Government, the department or agency with which this transaction originated may pursue available remedies, including suspension and/or debarment.

3. The prospective lower tier participant shall provide immediate written notice to the person to which this proposal is submitted if at any time the prospective lower tier participant learns that its certification was erroneous when submitted or has become erroneous by reason of changed circumstances.

4. The terms "covered transaction," "debarred," "suspended," "disqualified," "lower tier covered transaction," "participant," "person," "primary covered transaction," "principal," "proposal," "voluntarily excluded," as used in this clause, have the meanings set out in the Definitions and Coverage sections of rules implementing Executive Order 12549. You may contact the person to whom this proposal is submitted for assistance in obtaining a copy of those regulations.

5. The prospective lower tier participant agrees by submitting this proposal that, should the proposed covered transaction be entered into, it shall not knowingly enter into any lower tier covered transaction with a person who is debarred, suspended, declared ineligible, or voluntarily excluded from participation in this covered transaction, unless authorized by the department or agency with which this transaction originated.

6. The prospective lower tier participant further agrees by submitting this proposal that it will include the clause titled "Certification Regarding Debarment, Suspension, Disqualification, and Voluntary Exclusion--Lower Tier Covered Transactions," without modification, in all lower tier covered transactions and in all solicitations for lower tier covered transactions.

7. A participant in a covered transaction may rely upon a certification of a prospective participant in a lower tier covered transaction that is not debarred, suspended, disqualified, or voluntarily excluded from the covered transaction, unless it knows that the certification is erroneous. A participant may decide the method and frequency by which it determines the eligibility of its principals. Each participant may, but is not required to, check the Nonprocurement List.

8. Nothing contained in the foregoing shall be construed to require establishment of a system of records in order to render in good faith the certification required by this clause. The knowledge and information of a participant is not required to exceed that which is normally possessed by a prudent person in the ordinary course of business dealings.

9. Except for transactions authorized under paragraph 5 of these instructions, if a participant in a covered transaction knowingly enters into a lower tier covered transaction with a person who is suspended, debarred, disqualified, or voluntarily excluded from participation in this transaction, in addition to other remedies available to the Federal Government, the department or agency with which this transaction originated may pursue available remedies, including suspension and/or debarment.

NOTE: A completed copy of the "Certification Regarding Debarment, Suspension, Disqualification and Voluntary Exclusion--Lower Tier Covered Transactions" form must be retained by the Institution. The original blank certification must be returned with the PPA.

## IN WITNESS WHEREOF

the parties hereto have caused this Agreement to be executed by their duly authorized representatives.

Signature of Institution's Chief
Executive Officer
(CEO)/President/Chancellor:        *Alan Garber*                              Date: 8/21/2024
Print Name and Title:              Alan Garber

                                   President

For the Secretary:                 *Vanessa D. Dillard*                       Date: 8/21/2024
U.S. Department of Education