# EXHIBIT N

# King & Spalding

King & Spalding LLP
1700 Pennsylvania Avenue NW
Suite 900
Washington, DC 20006
www.kslaw.com

Robert K. Hur
Partner
Direct Dial: +1 202 383 8969
rhur@kslaw.com

June 17, 2025

**FOIA CONFIDENTIAL TREATMENT REQUESTED**

**VIA E-MAIL AND FTP**

Craig W. Trainor
Acting Assistant Secretary for Civil Rights
Office for Civil Rights
United States Department of Education
OCR_Atlanta@ed.gov

Re:    **OCR Compliance Review 01-25-6001**

Dear Mr. Trainor:

We write on behalf of our client Harvard University ("Harvard") in connection with your May 2, 2025 letter notifying Harvard of its selection for a compliance review under Title VI of the Civil Rights Act of 1964 (the "Notification Letter") and the Compliance Review Information Request enclosed therein (the "Information Request").

An encrypted zip file containing a production of documents in connection with the Information Request (HRVD-EDOCR-6001-000000001 through HRVD-EDOCR-6001-000000489) has been posted via FTP. We will send you the password needed to access the file under separate cover.

Harvard is committed to complying with all federal laws and regulations, including civil rights laws in connection with undergraduate admissions. Harvard continues to comply with Title VI and the U.S. Supreme Court's decision in *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 600 U.S. 181 (2023) ("*SFFA*"), particularly as a party to the final judgment in that case. In the wake of *SFFA* and before admitting the next undergraduate class, Harvard took steps to ensure compliance with the law. Further information regarding those steps and Harvard's commitment to compliance is contained in the enclosed Appendix.

\*      \*      \*

FOIA Confidential Treatment Requested

June 17, 2025
Page 2

This production is not intended to, and does not, waive any applicable privilege or protection, including the attorney-client privilege or work product protection. If any information that would be protected by the attorney-client privilege or work product doctrine was inadvertently produced, such production was not intended to be a waiver of any applicable privilege or protection, including pursuant to Fed. R. Evid. 502, and we respectfully request the prompt return of such privileged material.

On behalf of our client, we hereby claim that the materials provided to your office during the course of this matter, including this letter, appendix, and the documents accompanying this letter (Bates-numbered HRVD-EDOCR-6001-000000001 through HRVD-EDOCR-6001-000000489) are entitled to confidential treatment pursuant to the Freedom of Information Act ("FOIA"). We believe that the enclosed files qualify for exemption under the Freedom of Information Act, 5 U.S.C. § 552(b). We believe that Exemptions 4, 6, 7(A), 7(B), 7(C), and 7(F) may also be applicable to the documents, as well as the protections available under the Department of Education's FOIA Regulations, 34 C.F.R. § 5.11, the Privacy Act of 1974, 5 U.S.C. § 552a, and 18 U.S.C. § 1905, which generally prohibit the disclosure of confidential information.

Certain documents have been appropriately labeled in accordance with 28 C.F.R. § 16.7(b) to indicate our intention to maintain the confidential status of the enclosed materials. This claim of confidentiality shall continue indefinitely unless we advise you otherwise. We expect that all documents and copies of documents produced in connection with this matter, including this letter, will be kept in a non-public file and that access to them by any third party not a member of your office will be denied. Should your office receive any request for these documents, either pursuant to FOIA or otherwise, we request that you provide me with notice by telephone or e-mail, rather than relying upon the United States mail.

We further request that these materials be returned to us once your office has concluded its investigation. If you have any questions regarding this matter, please call me at (202) 383-8969.

Sincerely,

Robert K. Hur

cc:     Robert N. Driscoll, Dickinson & Wright

FOIA Confidential Treatment Requested

June 17, 2025
Page 1

**<u>Appendix</u>**

***Harvard's Commitment to Compliance with SFFA and Civil Rights Laws***

Harvard University ("Harvard" or the "University") is committed to ensuring compliance with federal civil rights laws, including Title VI of the Civil Rights Act of 1964. As a party to *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 600 U.S. 181 (2023) ("*SFFA*"), Harvard promptly affirmed—and continues to affirm—its respect for and compliance with the Supreme Court's decision.

Harvard has not wavered in its commitment to comply with *SFFA*. After the Supreme Court issued its opinion, Harvard worked directly with plaintiff SFFA to determine how best to implement the decision. In that process, Harvard shared documents with SFFA (since produced to you as part of this review) to ensure a shared understanding of the ruling and Harvard's implementation of its requirements. In the case's Final Judgment, mutually agreed upon and jointly submitted to the district court by SFFA and Harvard, the parties identified specific concrete steps to effect compliance.[1] The steps included significant operational changes, updated admissions and reading procedures, and training materials. Harvard comprehensively implemented these measures and pays close attention to ensure their continuing efficacy, including through continuing training of admissions staff on *SFFA* and Title VI.

Admission to Harvard is based on excellence and promise—including, but not limited to, measures such as grades and standardized test scores, which are required for applicants to Harvard College (the "College")—as well as other aspects of talent and merit, including constructive engagement and intellectual and extracurricular pursuits. Harvard seeks students who have demonstrated excellence already, as well as those who will go on to pursue excellence for America and the world.

Set forth below is additional information regarding Harvard's efforts to ensure compliance with *SFFA*, including issuing clear guidance to admissions personnel, making structural changes such as walling off uncontextualized race/ethnicity data during the admissions process, revising policies and procedures, and providing robust and recurring training. We hope this explanation aids your understanding of Harvard's ongoing commitment to its legal obligations.

\*    \*    \*

**I.    <u>Clear Guidance</u>**

Following the Supreme Court's decision in *SFFA*, Harvard developed and issued clear and concrete guidance regarding the changes required by that decision. Specifically, on July 27, 2023—shortly after the decision was issued and prior to the next admissions cycle—Harvard issued a memorandum (a copy of which was shared with SFFA prior to Final Judgment) that was distributed to admissions leadership regarding "Required Changes to Admissions Practices

---

[1] Final Judgment, *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, No. 1:14-cv-14176-ADB, ECF 754 (D. Mass. Jan. 9, 2024), produced at HRVD-EDOCR-0061-000000381.

FOIA Confidential Treatment Requested

June 17, 2025
Page 2

Following Supreme Court Decision in *SFFA v. Harvard*" (hereinafter the "Admissions Memo").[2] The Admissions Memo included:

- ***Summary of the Supreme Court's Decision.*** The Admissions Memo summarized the Supreme Court's decision, directly quoting the majority opinion. (Admissions Memo at 1-2)

- ***Direct Guidance.*** The Admissions Memo promulgated guidance in light of the Supreme Court's decision, stating: "[f]ollowing the Supreme Court's decision, all admissions officers and others within the Admissions Office are required to comply with the following guidance. **All documents used by the Admissions Office, including training materials, must also be updated to reflect this new guidance.**" (Admissions Memo at 2, emphasis in original)

- ***Prohibited Practices.*** The Admissions Memo clearly outlined prohibited practices, stating, for example:

  > Although the Supreme Court did not forbid Harvard from learning an applicant's race through the application, such as through an essay or recommendation letter, **Harvard is no longer allowed to provide any admissions advantage to an applicant on the basis of race. As discussed below, Harvard may consider an applicant's individual experiences, including an applicant's discussion of how race affected their life. But any application advantage must be tied to that student's individual experiences.** Op. 39-40. No advantage or tip or disadvantage may be awarded at any stage of the admissions process based on race identification alone. Any such information must be held neutral; in other words, it may not be a factor of any kind in your admission or selection process. (Admissions Memo at 2, emphasis in original)

- ***Required Changes.*** The Admissions Memo contained concrete guidance on the changes that were necessary to ensure compliance: "You should **remove from your admissions staff access to any uncontextualized information about race or ethnicity (i.e., any 'box' checked by an applicant about race or ethnicity).**"[3] (Admissions Memo at 2, emphasis in original) The Admissions Memo continued:

---

[2] Harvard Office of the General Counsel, "Required Changes to Admissions Practices Following Supreme Court Decision in *SFFA v. Harvard*," (July 27, 2023), produced at HRVD-EDOCR-0061-000000415. Note that this Memorandum, issued by Harvard's Office of General Counsel, was prepared as an attorney-client privileged document. As described herein, this document was later shared with SFFA prior to the Final Judgment with SFFA's express agreement that the provision would not waive Harvard's applicable privileges or protections.

[3] Harvard College removed access to uncontextualized racial data, such as when applicants check boxes on the Common Application (*i.e.*, "check box" data). An applicant may still choose to refer to their race or racial identity in their application, such as in a personal essay, or it may be

June 17, 2025
Page 3

- o Admissions office documents, such as summary sheets or compilations of data, must not include information that shows the applicant's self-identified race or ethnicity, disconnected from the individual's experience;

- o Admissions officers may not tabulate data about race or ethnicity in any way while the admissions process is ongoing, including while waiting for waitlist decisions;

- o Admissions officers may not track in any way race or ethnicity of applicants or the racial or ethnic make-up of the projected class. (Admissions Memo at 3)

- • *Practical Guidance.* The Admissions Memo provided practical guidance on instances in which an applicant's race or ethnicity is apparent in the application, making clear that "readers may consider that information *only* to the extent it is tied to an individualized assessment of the ways in which the applicant's race or ethnicity has affected their life and how those experiences provide a benefit to Harvard (e.g., leadership, perseverance, determination, motivation, etc.)." (Admissions Memo at 3, emphasis in original) The Admissions Memo further made clear that "admissions staff may not provide an advantage or disadvantage to any applicant based on this information about the applicant's race or ethnicity learned through the application materials." (Admissions Memo at 4)

Admissions leadership was instructed to share the Admissions Memo with all admissions officers and all admissions personnel to ensure that its guidance and requirements were understood and followed. Furthermore, it was—and continues to be—included in whole in guidance and handbooks provided to admissions readers and interviewers at the College each year since *SFFA*.[4]

## II.    *SFFA* Final Judgment

Harvard implemented changes following *SFFA* after careful analysis and consideration of the steps necessary to comply with the Court's decision. **Importantly, Harvard is differently situated from almost all other universities in that, after the Court's decision scrutinizing its admissions processes, Harvard then conferred with the plaintiff to ensure agreement on the meaning of the decision and the remedial actions it required.**

*Discussions with SFFA.* Following the Supreme Court's ruling in *SFFA*, the matter was remanded back to the district court for further proceedings consistent with the Court's decision. As part of these proceedings, Harvard and plaintiff SFFA conferred regarding compliance with the Court's opinion and the appropriate remedy. In these discussions, Harvard unequivocally affirmed

---

referenced within the context of other application inputs, such as recommendation letters or interviews. In such instances, as described herein, all admissions personnel were clearly and explicitly instructed and trained not to consider the fact of an applicant's race as a factor in making an admissions decision or provide any advantage or disadvantage to an applicant on the basis of race.

[4] HRVD-EDOCR-0061-000000415.

FOIA Confidential Treatment Requested

June 17, 2025
Page 4

that it would comply with the Supreme Court's decision and explained the measures the University was taking to ensure compliance.

These measures included removing access to race or ethnicity "check box" data, revising training materials, instructing how an applicant's or recommender's mention of an applicant's race in an application should be handled, directing alumni interviewers to not take an applicant's race or identity into account, and prohibiting the collection of any race/ethnicity data until after the close of admissions processes including any waitlist. SFFA asked follow-up questions, to which Harvard responded to ensure their full understanding.

Harvard also provided SFFA with updated reading procedures and the Admissions Memo described above. With the explanation and materials Harvard provided, **SFFA was satisfied with Harvard's actions, commitments, and implementation**, and the parties filed a Joint Motion for Entry of Final Judgment.[5] The district court granted this motion.[6]

*SFFA Final Judgment.* The Final Judgment entered by the district court clearly and transparently reflects Harvard's commitment. Harvard affirmed that it:

- Would not use the fact of an applicant's race as a factor in making admissions decisions;

- Has updated its reading procedures and other admissions training materials to make clear that race may not be used as a factor in making admissions decisions; and

- Will ensure that admissions readers do not have access to either (1) self-reported check-box race or ethnicity from the Common Application or any similar application form or (2) aggregated data (meaning data about two or more applicants assembled in any form, physical or digital) reflecting applicants' self-reported race or ethnicity at any time until after the admissions process has concluded.[7]

Thus, unlike other universities, Harvard's *SFFA* compliance efforts were vetted and approved not only by the district court but also by the very plaintiff that brought *SFFA*. Harvard publicly confirmed to SFFA and the court its commitment to honoring those efforts, consistent with the Final Judgment. Harvard has not wavered in that commitment.

III.  **Structural Changes**

Harvard implemented structural changes to its admissions processes following *SFFA*, including practical barriers rendering "check box" race-related information inaccessible to admissions teams until after admissions decisions have been made, and updated application

---

[5] Joint Motion for Entry of Final Judgment, *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, No. 1:14-cv-14176-ADB, ECF 752 (D. Mass. Jan. 8, 2024).

[6] Order Granting Joint Motion for Entry of Final Judgment, *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, No. 1:14-cv-14176-ADB, ECF 753 (D. Mass. Jan. 9, 2024).

[7] Final Judgment, *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, No. 1:14-cv-14176-ADB, ECF 754 (D. Mass. Jan. 9, 2024), produced at HRVD-EDOCR-0061-000000381.

FOIA Confidential Treatment Requested

June 17, 2025
Page 5

questions and requirements to advance Harvard's focus on assessing individuals and their unique talents and experiences.

***No access to data.*** Harvard College no longer permits admissions teams to view aggregated race or ethnicity data for applicants until after all admissions and waitlist decisions are complete. Harvard College also takes steps to ensure that admissions officers cannot view any uncontextualized information about race or ethnicity. Admissions officers do not have access to "check-box" information on the Common Application, or other self-reported race or ethnicity data.

Careful safeguards have been put in place post-*SFFA*. For example, the College now trains admissions officers that if an alumni interviewer (despite instructions not to) improperly references race in an interview report, the College requires an entirely new interview to be conducted by a different interviewer; the first interviewer report is not considered by admissions officers.

Moreover, the admissions teams also **do not tabulate or track race or ethnicity data in any way while the admissions process is ongoing**. Harvard maintains an FAQ page on its website, including the question, "[w]hy is Harvard no longer releasing data following the early action and regular action admissions cycles?"[8] The answer: "Moving to a single, annual admissions data release each fall will provide the most complete view of the newly enrolled class, reducing confusion and offering a predictable timeline. **Due to the 2023 U.S. Supreme Court decision, we are unable to access all information about Harvard's applicants, admitted students, and enrolling students, while the application review process is still underway.** Harvard will release admissions data, including final numbers of enrolled students consistent with our mandatory reporting to the U.S. Department of Education, as well as other information on applicants and admitted students."[9]

These structural changes ensure that an applicant's uncontextualized race and ethnicity information is not available to the admissions team during the admissions decision-making process.

***Updated applications.*** The College has also changed its application and application requirements. Starting in April 2024, Harvard College reinstated its standardized test score requirement.[10] Standardized tests are a means for all students, regardless of their background and life experience, to provide information that is predictive of success in college and beyond.

The College also revised its 2023-2024 applications. The College changed its supplement, removing a prompt for a voluntary essay and adding different, mandatory questions. Prior to Fall 2023, applicants were permitted to submit an optional, additional essay, and invited to write about distinctive aspects of their background. This optional essay was removed. Now, prospective applicants answer five mandatory short-answer questions, asking students to talk about themselves in specific ways (i.e., (i) how their life experiences have influenced who they are, and how they might contribute to Harvard; (ii) to describe a time they strongly disagreed with someone, how

---

[8] HRVD-EDOCR-0061-000000107.

[9] *Id.* (emphasis added).

[10] Because of the difficulty in accessing standardized testing during the COVID pandemic, Harvard College permitted applicants to apply without submitting standardized test scores. As testing opportunities have reopened around the globe, Harvard College has returned to requiring the submission of standardized tests.

FOIA Confidential Treatment Requested

June 17, 2025
Page 6

they communicated with that person, and what they learned from the experience; (iii) what non-classroom activities (including extracurricular activities, employment, and family responsibilities) have shaped who they are; (iv) how they expect to use their Harvard education in the future; and (v) things their roommates might like to know about them.)[11]

## IV.    Updated Policies and Procedures

In addition to structural changes, the College updated its admissions reading and interviewing guidance to conform with *SFFA*. **First and foremost, the guidebooks and handbooks for admissions officials and interviewers post-*SFFA* state clearly that the fact of an applicant's race is not permitted to be considered in admissions decisions.**

Following *SFFA*, Harvard College's Alumni Interviewer Guidebook and Reader Handbook from the 2023-24 admissions cycle added instructions prohibiting consideration of race. In the Alumni Interviewer Guidebook's "Do's & Do Not's" section, alumni interviewers are warned not to "[a]sk about a student's race, ethnicity, family's country of origin, sexual orientation, religion, or politics."[12] In the Reader Handbook for the 2023-24 admissions cycle, readers are given specific instructions about how they can and cannot use race as a consideration:

> Readers may not consider race, ethnicity, or national origin in assigning any of the ratings, including the Overall rating. Readers may consider information in an application that indicates an applicant's individual experiences, including an applicant's discussion of how race, ethnicity, or national origin affected their life, but any consideration must be tied to that student's individual experiences and based on information identifiable in the application materials.[13]

## V.    Robust and Continual Training

Following *SFFA* and prior to the next admissions cycle, Harvard immediately undertook robust training to leadership and admissions personnel regarding *SFFA* and Title VI, and updated prohibited and permitted admissions practices. Harvard's Office of General Counsel provided training, consistent with the Admissions Memo detailed above, about the Court's decision and what was now permissible and impermissible.[14]

This training was delivered in multiple formal sessions to hundreds of individuals. Trainings were conducted not only to those involved with admissions but to human resources officers, athletics coaches, alumni affairs and development, and people involved with the selection

---

[11] Harvard College, "First Year Application Supplement," 9-10, HRVD-EDOCR-0061-000000012. These mandatory short answer questions were introduced in the 2023-2024 applications. Harvard College, "First Year Application Supplement," 9-10, HRVD-EDOCR-0061-000000023. The questions for the 2023-2024 applications are identical to the questions for the 2024-2025 applications, except that the second question for the 2023-2024 applications instead asked applicants to briefly describe an intellectual experience that was important to them.

[12] Harvard College, "Alumni Interviewer Guidebook," 20, HRVD-EDOCR-0061-000000419.

[13] Harvard College, "Reader Handbook Class of 2028," 9, HRVD-EDOCR-0061-000000383.

[14] Note that these trainings constitute legal advice and are privileged.

FOIA Confidential Treatment Requested

June 17, 2025
Page 7

of fellowship recipients and the selection of participants in summer or pipeline programs. <u>Refresher trainings on *SFFA* continue</u>—training for College admissions officers occurred again in 2024.

The College also tailored its existing trainings. For example, the College conducts mandatory trainings each year for all admissions officers at which admissions officers are instructed that they may not consider race or ethnicity in evaluating applications.

## VI.    <u>Impact</u>

There has only been one full class admitted since *SFFA*, the class that arrived on campus in 2024. Pursuant to the compliance measures described above, racial and demographic data is not available to admissions teams until all admissions decisions are complete. The waitlist decisions for the incoming classes in the Fall of 2025 are not finalized; thus, demographic data for those classes is not available.

The available data, however, demonstrates change post-*SFFA* in the admissions and matriculation data for the College. The percentage of students who reported to be Black or African American decreased. Conversely, the percentage of students who identified as White, Asian American, or chose not to self-report their racial identity, generally increased. For example, in 2024 as compared to 2023:

- First-year students who identified as African American or Black represented 14% of the entering class, a decrease compared to 2023 where 18% of the entering class identified as African American or Black.[15]

- 37% of first-year students identified as Asian American, representing no change from the prior year.[16]

- The number of total **students who did <u>not</u> self-report their race/ethnicity increased by 115%** from 2023 to 2024.[17] Research indicates that students who choose not to disclose their race and ethnicity tend to be from a White background, so it is reasonable to assume that a significant number of these non-reporting students identify as White.[18]

---

[15] *See* Harvard College, "Admissions Statistics," HRVD-EDOCR-0061-000000137; The Harvard Gazette, "Harvard Releases Race Data for Class of 2028" (Sept. 11, 2024), https://news.harvard.edu/gazette/story/2024/09/harvard-releases-race-data-for-class-of-2028/.
[16] *See id.*
[17] *Compare* Harvard Office of Institutional Research & Analytics ("OIRA"), "Fall 2023 Fact Book," HRVD-EDOCR-0061-000000413, *with* Harvard OIRA, "Fall 2024 Fact Book," HRVD-EDOCR-0061-000000414.
[18] Research indicates that students who do not disclose their race and ethnicity are typically White. An article that looked at Online College Social Life Survey data administered to 24,000 students at 21 four-year colleges and universities between 2005 and 2011 indicates that there are likely more White students in higher education than previously thought because many White students identified as "Race unknown." Karly S. Ford and Megan M. Holland, *Identifying "Race Unknown" Postsecondary Students in Survey Data, Teachers College Record* (Oct. 28, 2020).

FOIA Confidential Treatment Requested

June 17, 2025
Page 8

* * *

As the information above demonstrates, Harvard takes its legal obligations seriously and continues to ensure that it complies with all federal laws and regulations, including those related to compliance with *SFFA*. We hope this information is helpful.

FOIA Confidential Treatment Requested