# EXHIBIT P

# KING & SPALDING

King & Spalding LLP
1700 Pennsylvania Avenue NW
Suite 900
Washington, DC 20006
www.kslaw.com

Robert K. Hur
Partner
Direct Dial: +1 202 383 8969
rhur@kslaw.com

July 31, 2025

**FOIA CONFIDENTIAL TREATMENT REQUESTED**

**VIA E-MAIL AND FTP**

Jana L. Erickson
Program Manager
Office for Civil Rights
United States Department of Education
OCR_Atlanta@ed.gov

Re:     **OCR Compliance Review 01-25-6001**

Dear Ms. Erickson:

I write on behalf of Harvard University ("Harvard") in response to your July 17, 2025 letter to President Alan M. Garber and Compliance Review Information Request ("July 17 Information Request"). For the reasons detailed below, Harvard respectfully objects to the July 17 Information Request as overbroad, unduly burdensome, and unnecessary to ascertain Harvard's current compliance with Title VI of the Civil Rights Act of 1964. We have previously provided sufficient information to demonstrate Harvard's compliance; the Department of Education has not explained why it needs additional information and materials to assess compliance. Nevertheless, in our ongoing efforts to work with the Department, we enclose with this letter data updated since our previous submission. Once you have reviewed this letter and the additional data, we are open to meeting and conferring with you regarding any remaining concerns.

As you note in your July 17 letter, on May 2, 2025, the Office for Civil Rights ("OCR"), through Acting Assistant Director for Civil Rights Craig Trainor, notified Harvard that it had been selected for a Title VI compliance review regarding "whether Harvard discriminates against applicants and potential applicants on the basis of race in its undergraduate admissions process." The information request was extraordinarily broad, with 18 interrogatories and 17 document requests asking for information about undergraduate admissions, financial aid, and "race-conscious offices, officials, practices, policies, initiatives, clubs, programs, events, orientations,

FOIA Confidential Treatment Requested

July 31, 2025
Page 2

trainings, awards, ceremonies, grants, contracts, scholarships, graduation requirements, housing, counseling, mentoring, and internships at Harvard."[1] Further, the requests go back nearly a decade to January 1, 2016, despite the fact that Harvard was a party to *Students for Fair Admissions, Inc. v. President and Fellows of Harvard College*, 600 U.S. 181 (2023) ("*SFFA*") and the Final Judgment in 2024. Harvard's recent submission provided information and materials reflecting the changes made subsequent to the Supreme Court's decision in that case to ensure compliance.

Just three days after Mr. Trainor's letter, on May 5, 2025, Secretary Linda McMahon issued a public letter to President Garber in which she informed him that "Harvard should no longer seek GRANTS from the federal government, since none will be provided."[2] In her letter, Secretary McMahon noted without evidentiary support and in apparent reference to *SFFA* that "[p]erhaps most alarmingly, Harvard has failed to abide by the United States Supreme Court's ruling demanding that it end its racial preferencing . . . ."[3] Secretary McMahon further wrote, "The Administration had previously been willing to maintain federal funding to Harvard, so long as Harvard committed to complying with long-settled Federal Law, including to protect and promote student welfare and the landmark decision of our Supreme Court against racial preferencing."[4]

A week later, on May 12, 2025—long before Harvard's deadline to respond to the compliance review—the Department of Education sent Harvard two more letters, both signed by Murray Bessette, Executive Director of the Office of Planning, Evaluation, and Policy Development, notifying Harvard that the Department was terminating specified federal awards. In each letter, Mr. Bessette stated, again without evidentiary support, "As relevant to the Department of Education's policies, the Department understands that Harvard continues to engage in race discrimination including in its admissions process. . . ."[5]

That same day, May 12, 2025, President Garber wrote Secretary McMahon in response to her May 5 letter. President Garber emphasized "common ground on a number of crucial issues, including the importance of ending antisemitism and other bigotry on campus." President Garber also reminded Secretary McMahon that following the Supreme Court's 2023 ruling in *SFFA*, Harvard "took additional steps across the university to ensure compliance with the law."[6] Those steps included working with the plaintiff in that case, Students For Fair Admissions, to confirm adherence to the decision.

On June 17, 2025, Harvard replied to Mr. Trainor's May 2 information requests regarding admissions compliance. In that reply, Harvard produced information and documents directly

---

[1] Compliance Review Information Request, OCR Case No. 01-25-6001 (May 2, 2025).

[2] Letter from Linda McMahon, Secretary, Department of Education, to Dr. Alan M. Garber, President, Harvard Univ. (May 5, 2025).

[3] *Id.*

[4] *Id.*

[5] Letter from Murray Bessette, Office of Planning, Evaluation, and Policy Development, Department of Education, to Christopher Avery, Harvard Univ. (May 12, 2025); Letter from Murray Bessette, Office of Planning, Evaluation, and Policy Development, Department of Education, to Jeannette Miller, Harvard Univ. (May 12, 2025)

[6] Letter from Dr. Alan M. Garber, President, Harvard Univ., to Linda McMahon, Secretary, Department of Education (May 5, 2025).

FOIA Confidential Treatment Requested

July 31, 2025
Page 3

responsive to Interrogatories 1, 2, 6, 7, 10, and 12, and Document Requests 1, 4, 5, 6, 10, 11, and 12 of the May 2 Request. Further, Harvard provided a detailed factual narrative regarding its timely and ongoing compliance with *SFFA*, including detail of direct and clear guidance provided post-*SFFA* across the University regarding the change in law and necessity of compliance. In its June 17 reply, Harvard further explained to OCR how the University is differently situated from almost all other universities in that, after the Supreme Court's 2023 decision, Harvard promptly conferred with the *SFFA* plaintiff to ensure agreement on the meaning of the decision and the remedial actions it required. That process resulted in a Final Judgment, approved and entered by the district court in *SFFA*, that clearly and transparently reflected Harvard's commitment and affirmation to post-*SFFA* compliance, including that Harvard "would not use the fact of an applicant's race as a factor in making admissions decisions."

We are aware of no factual basis or evidence refuting that affirmation or Harvard's ongoing compliance with *SFFA*. Even if OCR had heard of or received an allegation regarding Harvard's compliance, the nature and scope of the July 17 Information Request is untethered to any reasonable investigative inquiry authorized by law. Under Title VI and its implementing regulations at 34 C.F.R. § 100 *et seq.*, OCR has the authority to conduct periodic compliance reviews of federal funding recipients to "determine whether they are complying" with Title VI, and if not, to work with the institution informally to achieve voluntary compliance. 34 C.F.R. § 100.7(a)–(c). As such, OCR's authority is limited to ascertaining and achieving *current* compliance with Title VI.

As a threshold matter, the nearly 10-year period covered by OCR's requests cannot be relevant to current compliance with *SFFA*. Providing detailed records and information extending back seven years before *SFFA* would not provide OCR with any relevant information warranting such an unduly burdensome request. Furthermore, many of OCR's requests are untethered to its stated purpose of determining whether Harvard "discriminates against applicants and potential applicants on the basis of race in its undergraduate admissions process." For example, the May 2 and July 17 Information Requests include three interrogatories that ask about all "race-conscious offices, officials, practices, policies, initiatives, clubs, programs, events, orientations, trainings, awards, ceremonies, grants, contracts, scholarships, graduation requirements, housing, counseling, mentoring, and internships at Harvard," and provides a list of 26 terms that, by the Information Requests' definition, *per se* render an office, official, or practice "race-conscious," including such anodyne terms as "advocacy" and "belonging." These broad requests are entirely unrelated to Harvard's admissions processes and are not reasonably relevant to determining whether Harvard's admissions processes comply with Title VI.

The overbroad and burdensome nature of OCR's requests strongly suggests that the Department's compliance review—ostensibly focused on Harvard's current compliance with Title VI—is simply another front in the federal government's wide-ranging campaign to retaliate and punish Harvard for exercising its First Amendment rights in rejecting the government's efforts to control its speech, governance, and institutional values. On April 14, 2025, Harvard rejected the government's detailed list of conditions to "maintain Harvard's financial relationship with the federal government," which included:

FOIA Confidential Treatment Requested

July 31, 2025
Page 4

- "commission[ing] an external party" satisfactory to the government to "audit the student body, faculty, staff, and leadership for viewpoint diversity, such that each department, field, or teaching unit must be individually viewpoint diverse";
- for departments, fields, and teaching units found to "lack viewpoint diversity," "hiring a critical mass of new faculty" and "admitting a critical mass of students" to provide the government's preferred balance of viewpoint diversity;
- "reform[ing] and restructuring" governance; and
- "shutter[ing]" all DEI programs "through structural and personnel changes."[7]

The government's retaliation in response to Harvard's rejection of those demands was swift and wholesale. Within hours, the government froze $2.2 billion in multi-year grants and $60 million in multi-year contract value to Harvard, citing "the troubling entitlement mindset that is endemic in our nation's most prestigious universities and colleges."[8] Harvard filed suit on April 21, challenging the government's freeze of federal research funds as a violation of the First Amendment, a circumvention of the procedures and limits in Title VI, and arbitrary and capricious under the Administrative Procedure Act.[9] That matter is currently pending in the United States District Court in Massachusetts.

The government responded to Harvard's rejection of its demands by launching unfounded investigations from multiple federal agencies, including the Department of Justice, the Department of Health and Human Services, the Department of Homeland Security, the Equal Employment Opportunity Commission, and this Department into Harvard's academic and administrative practices. Furthermore, public statements from both President Trump and Secretary McMahon have illustrated the retaliatory nature of the actions taken by the federal government and this Department. For example, President Trump threatened Harvard's "Tax Exempt Status" and made clear that the revocation would be purely retaliatory. On social media, he stated that Harvard should "be Taxed as a Political Entity if it keeps pushing political, ideological, and terrorist inspired/supporting 'Sickness[].'"[10] On May 5, Secretary McMahon, purporting to speak on behalf of every agency and department, announced that "Harvard will cease to be a publicly funded institution," and in the days that followed, Harvard began to receive institution-wide termination notices from various agencies.[11] At a press conference on May 28—after the White House reportedly convened a meeting of top government officials from nearly a dozen agencies to discuss additional punitive measures to target Harvard—the President again made clear that his Administration was retaliating against Harvard for its exercise of its legal rights: "every time

---

[7] Letter from Josh Gruenbaum, Comm'r, Gen. Servs. Admin., et al., to Dr. Alan M. Garber, President, Harvard Univ., et al. (Apr. 11, 2025), https://www.harvard.edu/research-funding/wp-content/uploads/sites/16/2025/04/Letter-Sent-to-Harvard-2025-04-11.pdf [hereinafter Gruenbaum Letter].

[8] Press Release, U.S. Dep't of Ed., Joint Task Force to Combat Anti-Semitism Statement Regarding Harvard University (Apr. 14, 2025), https://www.ed.gov/about/news/press-release/joint-task-force-combat-anti-semitism-statement-regarding-harvard-university.

[9] Complaint for Declaratory and Injunctive Relief, *President and Fellows of Harvard College v. U.S. Dep't of Health and Human Servs. et al.*, 1:25-cv-11048-ADB (Apr. 21, 2025).

[10] Donald J. Trump (@realDonaldTrump), Truth Social (Apr. 15, 2025), https://truthsocial.com/@realDonaldTrump/posts/114342374504628520.

[11] *See* First Amended Complaint for Declaratory and Injunctive Relief ¶¶ 7-8, *President and Fellows of Harvard College v. U.S. Dep't of Health and Human Servs. et al.*, 1:25-cv-11048-ADB (May 13, 2025).

FOIA Confidential Treatment Requested

July 31, 2025
Page 5

[Harvard] fights, they lose another $250 million."[12] Similarly, Secretary McMahon has confirmed the government's retaliatory approach, explaining that Harvard has "taken a very hard line, so we took a hard line back."[13]

Despite these objections and concerns about the true nature of the Department's requests, Harvard remains committed to compliance with Title VI and all civil rights laws. Harvard is supplementing its June 17 response with additional data (updated since our prior response) in connection with OCR's requests. An encrypted zip file containing a production of documents in connection with the July 17 Information Requests (HRVD-EDOCR-6001-000000490 through HRVD-EDOCR-6001-000000521) has been posted via FTP. We will send you the password needed to access the file under separate cover.

\*    \*    \*

This production is not intended to, and does not, waive any applicable privilege or protection, including the attorney-client privilege or work product protection. If any information that would be protected by the attorney-client privilege or work product doctrine was inadvertently produced, such production was not intended to be a waiver of any applicable privilege or protection, including pursuant to Fed. R. Evid. 502, and we respectfully request the prompt return of such privileged material.

On behalf of our client, we hereby claim that the materials provided to your office during the course of this matter, including this letter, appendix, and the documents accompanying this letter (Bates-numbered HRVD-EDOCR-6001-000000490 through HRVD-EDOCR-6001-000000521) are entitled to confidential treatment pursuant to the Freedom of Information Act ("FOIA"). We believe that the enclosed files qualify for exemption under the Freedom of Information Act, 5 U.S.C. § 552(b). We believe that Exemptions 4, 6, 7(A), 7(B), 7(C), and 7(F) may also be applicable to the documents, as well as the protections available under the Department of Education's FOIA Regulations, 34 C.F.R. § 5.11, the Privacy Act of 1974, 5 U.S.C. § 552a, and 18 U.S.C. § 1905, which generally prohibit the disclosure of confidential information.

Certain documents have been appropriately labeled in accordance with 28 C.F.R. § 16.7(b) to indicate our intention to maintain the confidential status of the enclosed materials. This claim of confidentiality shall continue indefinitely unless we advise you otherwise. We expect that all documents and copies of documents produced in connection with this matter, including this letter, will be kept in a non-public file and that access to them by any third party not a member of your office will be denied. Should your office receive any request for these documents, either pursuant to FOIA or otherwise, we request that you provide me with notice by telephone or e-mail, rather than relying upon the United States mail.

---

[12] *President Donald Trump Taking Questions in the Oval Office at 6:05* (Newsmax broadcast May 28, 2025, 12:42 PM ET), https://perma.cc/ZUC6-3SP6.
[13] CNBC Television, *Education Secretary Linda McMahon to Harvard: Obey the law and you can be eligible for funding*, YouTube, at 1:04-31 (May 7, 2025), https://www.youtube.com/watch?v=bb6YJUHMqc4.

FOIA Confidential Treatment Requested

July 31, 2025
Page 6

      We further request that these materials be returned to us once your office has concluded its investigation. If you have any questions regarding this matter, please call me at (202) 383-8969.

                    Sincerely,

                    Robert K. Hur

cc:     Michael Bennett, Compliance Team Leader, ED-OCR
        Robert N. Driscoll, Dickinson Wright, PLLC

FOIA Confidential Treatment Requested