## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>v.<br><br>PRESIDENT AND FELLOWS OF<br>HARVARD COLLEGE,<br><br>        Defendant. | Case No. 1:26-cv-10844-MJJ |

**REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
OR IN THE ALTERNATIVE FOR A STAY PENDING FINAL RESOLUTION OF
*MASSACHUSETTS V. DEPARTMENT OF EDUCATION***

**TABLE OF CONTENTS**

INTRODUCTION ..........................................................................................................................1

ARGUMENT..............................................................................................................................1

    I.      The Government Did Not Comply with the Procedural Prerequisites to this Lawsuit................................................................................................................. 1

    II.     The Government Fails to Rebut Its Improper Purpose ........................................... 3

    III.    In the Alternative, a Stay Is Warranted Pending a Decision in *Massachusetts v. ED* ........................................................................................... 5

CONCLUSION...........................................................................................................................5

i

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*United States ex rel. Accardi v. Shaughnessy*,
  347 U.S. 260 (1954)........................................................................................2

*Adams v. Richardson*,
  480 F.2d 1159 (D.C. Cir. 1973)......................................................................2

*In re Admin. Subpoena No. 25-1431-019*,
  800 F. Supp. 3d 229 (D. Mass. 2025)....................................................1, 4, 5

*Alexander v. Sandoval*,
  532 U.S. 275 (2001)........................................................................................1

*Am. Farm Lines v. Black Ball Freight*,
  397 U.S. 532 (1970)........................................................................................2

*Redondo-Borges v. U.S. Dep't of Hous. & Urb. Dev.*,
  421 F.3d 1 (1st Cir. 2005)...............................................................................5

*United States v. Arkansas*,
  2011 WL 251107 (E.D. Ark. Jan. 24, 2011).................................................2

*United States v. Caceres*,
  440 U.S. 741 (1979)........................................................................................2

*United States v. Florida*,
  938 F.3d 1221 (11th Cir. 2019) .....................................................................1

*United States v. Harris Methodist Fort Worth*,
  970 F.2d 94 (5th Cir. 1992) ...........................................................................1

*United States v. Sturm, Ruger & Co.*,
  84 F.3d 1 (1st Cir. 1996).............................................................................1, 4


**Regulations**

28 C.F.R. § 42.108(d)(3)....................................................................................2

28 C.F.R. § 50.3 ............................................................................................2, 3

34 C.F.R. § 100.8(d)(2)–(3) ..............................................................................3

**Other Authorities**

Tunku Varadarajan, *Harmeet Dhillon, Trump's Civil-Rights Enforcer in Action*,
  Wall Street Journal (Mar. 27, 2026) ............................................................4

**INTRODUCTION**

The Government advances an absolutist position: it can disregard statutory and regulatory requirements and file a lawsuit whenever a federal-funding recipient does not provide all information demanded in a Title VI investigation, no matter how broad or unnecessary the demands, without engaging with or addressing the objections. That is not the law. Congress placed "elaborate restrictions" on agency enforcement of Title VI, *Alexander v. Sandoval*, 532 U.S. 275, 290 (2001), to ensure that the Government negotiates with regulated entities before suit, *United States v. Florida*, 938 F.3d 1221, 1250 (11th Cir. 2019). The Government did the opposite, cutting off negotiation and rushing to Court after the President again expressed his displeasure with Harvard.

"[C]onstitutional standards of reasonableness," *United States v. Harris Methodist Fort Worth*, 970 F.2d 94, 100 (5th Cir. 1992), require that the Government have a proper purpose and follow proper procedures when demanding information administratively. The Government does not dispute this standard, and its concessions confirm the standard has not been met. The Government disregarded its own regulations before filing suit, refusing entirely to engage with Harvard's substantive objections to the nature and scope of the demands. That is unsurprising given that this litigation is part of the Government's unconstitutional retaliatory campaign against Harvard.

As this Court recognized in a similar context, the Government's disregard for its procedures, combined with evidence of improper purpose, require dismissal. *In re Admin. Subpoena No. 25-1431-019*, 800 F. Supp. 3d 229 (D. Mass. 2025). Alternatively, the Court should stay the case pending Judge Saylor's review of concededly overlapping demands for information.

**ARGUMENT**

**I.    The Government Did Not Comply with the Procedural Prerequisites to this Lawsuit**

The Government does not dispute that it must follow "proper procedures" to enforce an informational demand, *United States v. Sturm, Ruger & Co.*, 84 F.3d 1, 4 (1st Cir. 1996), but neither

1

agency did so. They did not engage with Harvard's objections to the overbroad requests, let alone pursue the "concerted effort … to persuade" that is required to "*fully conform[]* to the letter and spirit of … the Act and … regulations []*.*" 28 C.F.R. § 50.3 (emphasis added).

DOJ asserts that "[a]gencies are not required ... to follow all of their rules." Opp. at 12 (citing dicta from *United States v. Caceres*, 440 U.S. 741, 754 n.18 (1979), a criminal case about the exclusionary rule). But they must at minimum follow rules intended to "confer important procedural benefits upon individuals." *Am. Farm Lines v. Black Ball Freight*, 397 U.S. 532, 538 (1970); *see also United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 267 (1954). Moreover, the obligation to seek voluntary compliance with information requests flows directly from Title VI itself, in which Congress mandated these efforts "to avoid unnecessary invocation of formal enforcement procedures," *Adams v. Richardson*, 480 F.2d 1159, 1163 (D.C. Cir. 1973), thereby conserving judicial resources. "The Department[']s argument … that it need not make an effort to obtain voluntary compliance but only determine that compliance cannot be secured by voluntary means is at odds with its own interpretation of the statute."[1] *United States v. Arkansas,* 2011 WL 251107*,* at *7 (E.D. Ark. Jan. 24, 2011).

The Government also ignored specific regulatory prerequisites to litigation. DOJ disregarded its obligation to notify Harvard "of its failure to comply and of the action to be taken to effect compliance." 28 C.F.R. § 42.108(d)(3). Citing an inapposite due process case, the Government argues that it provided the required notice by threatening potential future consequences if Harvard failed to acquiesce by October 10, 2025. Opp. 13. However, the Government never informed Harvard after that date that its already-substantial production was insufficient and that DOJ

---

[1] The Government's extension of its own self-imposed deadlines, Opp. 11–12, is hardly a "concerted effort … to persuade" Harvard that it should provide outstanding information voluntarily, particularly when Harvard was producing information throughout that period, 28 C.F.R. § 50.3.

2

would therefore file suit.[2] The Government's interpretation would undermine the requirement that pre-suit negotiations be "pursued through each stage of enforcement action." 28 C.F.R. § 50.3.

The Government's disregard for Education Department ("ED") regulatory requirements is equally glaring. ED was required to "notif[y]" Harvard "of its failure to comply and of the action to be taken to effect compliance" and wait "at least 10 days from the mailing of such notice," while making "additional efforts … to persuade [Harvard] to comply." 34 C.F.R. § 100.8(d)(2)–(3). The Government asserts that its September 2025 Denial of Access letter provides the required notice, but it contains no mention of the enforcement action to be taken. Opp. 13. The Government also cites as notice the March 2026 Notice of Impending Enforcement Action, but there was no negotiation afterwards. *Id.* at 13–14. Moreover, the Government's Opposition ignores ED's Case Processing Manual, which implements the regulations and requires ED to engage in "post-Letter … negotiations" after sending a "Letter of Impending Enforcement Action" and to "issue a letter to [Harvard] stating that the case will be referred to DOJ in 10 days." Manual § 602. ED never complied with these mandatory requirements. When followed, the mandatory regulatory sequence ensures the Department negotiates after the stakes are fully crystallized. But because ED skipped steps, that did not happen.[3]

## II.    The Government Fails to Rebut Its Improper Purpose

The agencies' investigations into Harvard are part of the Administration's unconstitutional campaign of retaliation. Mot. 8–10. This conclusion follows from facts the Government does not dispute or deny: The Title VI investigation into the College and Medical School began on the very

---

[2] The Government concedes that it did not pursue voluntary compliance for its demands from the Law School. At a minimum, the Court should dismiss that aspect of the Amended Complaint.

[3] The Government asserts in a footnote that ED negotiations would have been futile, Opp. 14 n.2, but as proof it cites only DOJ's lawsuit, which similarly ignored efforts at voluntary compliance.

day that the Government sent its unconstitutional demands to Harvard; the investigation into the Law School started four days after Harvard rejected those demands; DOJ began demanding extensive additional information just five days after Judge Burroughs' decision in *Harvard v. HHS*; and DOJ filed this lawsuit less than two weeks after the President stated publicly that he "want[ed] nothing further to do, in the future, with Harvard University." Mot. at 8–10.

The Government does not dispute the link between this lawsuit and the broader campaign of retaliation. Instead, it has touted it. The Assistant Attorney General for Civil Rights proudly stated that DOJ targeted Harvard because it "sued [the Government]" and "is defiant."[4] Indeed, the President encouraged her: "Good, good. You keep suing them [Harvard]. To hell with them." *Id*. at 10.

The Government does not refute the obvious import of these statements and does not contest that they may be considered on a motion to dismiss. It instead argues that retaliation is an affirmative defense with a higher standard. Opp. at 16–17. In a documents case, however, "the agency must prove" it seeks information for a proper purpose for its demands to be judicially enforceable. *Sturm, Ruger & Co.*, 84 F.3d at 4. It cannot do so. Citing its own allegations, the Government argues that it is investigating Harvard only to determine its compliance with *SFFA*. Opp. at 17–18. Of course, "[t]his logic … would preclude any form of judicial review as the Government's self-proclaimed say-so would always be sufficient …. This is no logic at all." *In re Admin. Subpoena No. 25-1431-019*, 800 F. Supp. 3d at 237. Moreover, as a party to *SFFA*, Harvard's compliance with the Supreme Court's ruling received explicit judicial scrutiny, ultimately satisfying both the plaintiff and the court and ending the litigation. And the Government has failed

---

[4] The Government suggests in passing, Opp. 17, that AAG Dhillon's statement references an "unrelated case," while omitting that she expressly singles out Harvard in the cited article for "stonewall[ing] us on document requests to which we [are] entitled." Tunku Varadarajan, *Harmeet Dhillon, Trump's Civil-Rights Enforcer in Action*, Wall Street Journal (Mar. 27, 2026), https://www.wsj.com/opinion/harmeet-dhillon-trumps-civil-rights-enforcer-in-action-9e93b66d.

to "offer[] an iota of suspicion that" Harvard, since the Supreme Court's decision, is failing to comply with Title VI. *Id*. at 238.

Recognizing that the Amended Complaint's allegations do not rebut the proof of improper purpose, the Government improperly tries to add more, asserting without support that other schools "have produced or pledged to produce requested admissions data." Opp. at 4 n.1. The Amended Complaint alleges only the much weaker claim that "nearly all" "elite" schools agreed to produce some quantity of admissions data, ¶ 69, and a plaintiff may not "ma[ke] additional allegations … [in its] memorandum in opposition to [its] motion[] to dismiss." *Redondo-Borges v. U.S. Dep't of Hous. & Urb. Dev.*, 421 F.3d 1, 7 n.2 (1st Cir. 2005). In any event, the Government still does not contend that any school gave DOJ all the information it requested here, or that any other school has provided ED with any information whatsoever. *See* Opp. 17; Am. Compl. ¶¶ 68–69.[5]

### III.    In the Alternative, a Stay Is Warranted Pending a Decision in *Massachusetts v. ED*

The Government does not deny that ordering Harvard to produce data that overlaps with the data at issue in the IPEDS litigation would interfere with Judge Saylor's injunction by "penaliz[ing]" Harvard for failing to provide it. Mot. at 11. The Government also does not dispute that the IPEDS litigation could "partly ... moot" this case. Opp. 19–20. Given that a decision by Judge Saylor could moot aspects of the Government's demands, and the Government's lack of interest in enforcing Title VI now when it is "not accus[ing] Harvard of any discriminatory conduct," a stay is warranted. Am. Compl. at 2.

### CONCLUSION

The Court should dismiss the Amended Complaint or in the alternative stay the case.

---

[5] The Government does not contest that its contract claim cannot be maintained if its Title VI claim fails. Opp. 18–19. Thus, the contract claim must fail for the same reasons.

June 24, 2026

Respectfully submitted,

PRESIDENT AND FELLOWS OF
HARVARD COLLEGE

By its attorneys,

/s/ Steven P. Lehotsky

Stuart F. Delery*                          Steven P. Lehotsky (BBO #655908)
Helgi C. Walker*                           LEHOTSKY KELLER COHN LLP
Eric R. Womack*                            200 Massachusetts Ave. NW, Suite 700
Eric Brooks*                               Washington, DC 20001
GIBSON, DUNN & CRUTCHER LLP                T: (512) 693-8350
1700 M Street, N.W.                        F: (512) 727-4755
Washington, D.C. 20036-4504                steve@lkcfirm.com
sdelery@gibsondunn.com
hwalker@gibsondunn.com                     Robert K. Hur*
ewomack@gibsondunn.com                     KING & SPALDING LLP
ebrooks2@gibsondunn.com                    1700 Pennsylvania Ave. NW, Suite 900
                                           Washington, DC 20006
Joshua S. Levy (BBO #563017)               rhur@kslaw.com
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199
Joshua.Levy@ropesgray.com                  *Admitted Pro Hac Vice

## CERTIFICATE OF SERVICE

I certify that on June 24, 2026, I caused this document to be filed through the CM/ECF system, where it will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

/s/ Steven P. Lehotsky
Steven P. Lehotsky