**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>PRESIDENT AND FELLOWS OF HARVARD COLLEGE,<br><br>Defendant. | ) | Civil Action No. 26-10844-MJJ |

**MEMORANDUM OF DECISION**

November 2, 2026

JOUN, D.J.

The United States brings this action to obtain admissions information requested by the Department of Justice ("DOJ") and the Department of Education ("Education") in reviews of Harvard University's compliance with Title VI of the Civil Rights Act of 1964. Harvard moves to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(6) or, alternatively, to stay this action pending related litigation. [Doc. Nos. 31–32]. The Government opposes. [Doc. No. 34]. Harvard replied. [Doc. No. 35]. I heard argument on September 24, 2026. [Doc. No. 41].

For the reasons below, the motion is GRANTED without prejudice. I decide a limited question: whether the Government has adequately established, at this stage and on the materials properly considered, that it satisfied the prerequisites to judicial enforcement invoked in this complaint. The ruling does not determine whether Harvard has discriminated, whether the agencies may lawfully seek appropriately defined applicant-level data, or whether Harvard may ultimately be required to provide such data.

# I. BACKGROUND

## A. The Government's information requests

Harvard is a private university receiving federal assistance through programs administered by DOJ and Education. [Doc. No. 27 at ¶¶ 2, 10]. The amended complaint alleges that Harvard agreed, as a condition of that assistance, to comply with Title VI and the agencies' implementing regulations. [*Id*. at ¶¶ 12, 44]. Following *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 600 U.S. 181 (2023), the agencies opened reviews of Harvard's admissions practices. [*Id.* at ¶ 26]. Their information requests sought, among other things, applicant-level admissions information, academic measures, race and ethnicity, essays or other records, and admissions outcomes. [*Id.*].

DOJ requested admissions records in April 2025 from Harvard College, Harvard Medical School, and Harvard Law School. [*Id.* at ¶¶ 26–28]. Harvard made productions in May 2025. [*Id.* at ¶¶ 31, 33]; [Doc. No. 32 at 10]. The Government alleges that they did not contain the applicant-level information necessary to evaluate compliance. [Doc. No. 27 at ¶¶ 32, 34]. In later correspondence, DOJ set further deadlines and warned of potential legal action to compel production. *See* [*id.* at ¶¶ 36–40]. It ultimately agreed to extend the production deadline to October 10, 2025, indicated that no further extension would be granted, and stated that failure to produce all requested data would be viewed as a failure to cooperate. [*Id.* at ¶¶ 39–40]; [Doc. No. 34 at 16–18]. Harvard maintains that its productions were substantial and that DOJ did not engage its substantive objections to scope, burden, and relevance. [Doc. No. 32 at 19–21]; [Doc. No. 35 at 4–6].

Education's Office for Civil Rights ("OCR") opened a separate review on May 2, 2025, and requested applicant-level admissions data and other materials. [Doc. No. 27 at ¶¶ 53–56].

Harvard responded in June 2025, but, according to the Government, did not supply the requested applicant-level data. [Doc. No. 27 at ¶¶ 57–59]. OCR issued a September 19, 2025 "Denial of Access" letter warning that failure to supply information within twenty days would lead to a letter of impending enforcement action. [*Id.* at ¶ 61]. On March 23, 2026, OCR issued a letter identifying possible administrative proceedings or referral to DOJ for judicial proceedings. [*Id.* at ¶ 62]. Education referred its matter to DOJ on April 24, 2026. [*Id.* at ¶ 65]. Harvard disputes whether those notices and the steps following them complied with the governing regulations. [Doc. No. 32 at ¶¶ 18–22].

**B. <u>Governing statutory and regulatory provisions</u>**

Title VI prohibits discrimination on the ground of race, color, or national origin in federally assisted programs. *See* 42 U.S.C. § 2000d. Section 2000d-1 authorizes agencies to effectuate that prohibition through regulations and permits compliance to be effected by termination or refusal of assistance or by other means authorized by law. Before taking enforcement action under the statutory framework, the agency must advise the recipient of its failure to comply and determine that compliance cannot be secured by voluntary means. *Id.*

The agencies' information-access regulations require recipients to submit pertinent compliance reports and permit appropriate access to books, records, and sources of information. 28 C.F.R. § 42.106(b)–(c); 34 C.F.R. § 100.6(b)–(c). These duties are distinct from the prohibition on discrimination itself. The Government therefore need not first prove actual admissions discrimination to seek relevant compliance information. But the mandatory character of an information obligation does not eliminate applicable conditions governing its judicial enforcement.

DOJ's regulation, 28 C.F.R. § 42.108(a), expressly includes proceedings to enforce an assurance or contractual undertaking among authorized enforcement methods. Subsection (d) addresses the determination that voluntary compliance cannot be secured, approval, and notice of the failure and intended action. Education's parallel regulation, 34 C.F.R. § 100.8(d), requires a voluntary-compliance determination and notice, and additionally addresses a ten-day interval after mailing of notice during which further efforts to persuade compliance must be made. These provisions must be applied to each agency's conduct separately.

## II. LEGAL STANDARD

Rule 12(b)(6) requires acceptance of well-pleaded factual allegations as true and reasonable inferences in the plaintiff's favor, but does not require acceptance of legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). The Court may consider the complaint, incorporated documents, and matters properly subject to judicial notice. *O'Brien v. Deutsche Bank Nat'l Trust Co.*, 948 F.3d 31, 33 (1st Cir. 2020).

I also consider Rule 9(c), which permits a party to allege generally that conditions precedent have occurred or been performed. Fed. R. Civ. P. 9(c). Thus, the mere omission of the words "voluntary compliance" or a citation to § 2000d-1 from the complaint is not, standing alone, dispositive. At the same time, a general characterization of the agency's right to sue does not answer a properly presented challenge where the complaint and incorporated correspondence affirmatively describe the process leading to enforcement. I address what the pleaded and incorporated facts show, rather than requiring ritual use of statutory language.

Where the Government seeks judicial assistance in enforcing an administrative demand, the First Circuit instructs courts to consider whether the demand serves an authorized purpose,

seeks relevant and adequately described material, and was issued using proper procedures. *United States v. Sturm, Ruger & Co.*, 84 F.3d 1, 4 (1st Cir. 1996). The present decision concerns the fourth consideration, not the ultimate relevance or permissible breadth of every request.

## III. DISCUSSION

### A. <u>Voluntary compliance is not the same as a willingness to discuss narrower production</u>

The Government argues that its efforts were sufficient because the agencies gave Harvard repeated opportunities to supply applicant-level data, warned of enforcement, and faced continued nonproduction. *See generally* [Doc. No. 34]. Harvard responds that the agencies did not genuinely seek voluntary compliance because they did not engage in their substantive objections and did not follow the prescribed notice-and-negotiation sequence. *See* [Doc. No. 32 at 19–22]. Neither party's proposition can be accepted without examination of the governing requirements.

A determination that voluntary compliance cannot be secured does not require an agency to abandon an investigation or to negotiate indefinitely. Nor does an agency's willingness to negotiate the breadth or format of production after commencing suit necessarily negate a pre-suit determination. In particular, the Government states that it remains willing to negotiate scope only if Harvard provides applicant-level data sufficient for a meaningful review. [Doc. No. 34 at 16]. That qualified statement is not an admission that voluntary compliance was attainable before suit. Similarly, counsel's remarks at argument about negotiating burden do not independently decide whether the required determination was made at the relevant time.

The statutory command nevertheless requires more than an unexamined assertion that the recipient did not provide everything requested. As *Adams v. Richardson* explains, voluntary compliance is part of the congressional enforcement design. 351 F. Supp. 636, 641 (D.D.C. 1972).

Whether the agency satisfied that requirement turns on its actual procedure and the applicable regulations, not on the abstract possibility of further bargaining.

**B. <u>The DOJ proceedings</u>**

The Government has substantial arguments that DOJ pursued voluntary cooperation. It cites multiple requests, extensions of time, the October 10 deadline, warnings that nonproduction would be treated as noncooperation, and correspondence advising that legal action might follow. [Doc. No. 34 at 16–18]. I do not disregard those steps. In particular, the absence of a fresh warning after October 10 would not necessarily invalidate an otherwise sufficient advance notice; the regulations do not require magic words or endlessly repeated notices.

The Government further argues that the Assistant Attorney General's signature on the complaint itself reflected the determination contemplated by 28 C.F.R. § 42.108(d)(1). [*Id*. at 17]. That position deserves consideration but does not completely resolve the issue. A decision to litigate and the antecedent determination described in the regulation are related, yet not interchangeable. The regulation separately identifies the necessary determination and the required advice to the recipient. *See* § 42.108(d). An endorsement of the pleading does not, without more, identify when the relevant determination was made or when it was communicated to Harvard, its regulatory basis, or how the disputed efforts to obtain voluntary compliance were evaluated. The statute requires the funding recipient be notified of its failure to comply, and the "action to be taken to effect compliance," before that action is taken, not in tandem with it. *Id*.

Harvard argues that DOJ treated the October deadline as a substitute for discussing the scope of the demand, even as Harvard was providing some information and raising objections. [Doc. No. 32 at 19–21]; [Doc. No. 35 at 4–6]. DOJ was not obliged to accept Harvard's proposed limitations. But a deadline and a threat to sue, standing alone, do not necessarily demonstrate

compliance with the regulatory voluntary-compliance process where the agency seeks to enforce disputed demands for extensive information. The materials described in the complaint and briefing do not establish that DOJ made the particular pre-enforcement determination in the manner contemplated by § 42.108(d), as opposed to concluding only that Harvard had failed to satisfy DOJ's outstanding requests by the agency's deadline. For example, the complaint does not allege that DOJ informed Harvard of the action it would take—namely, litigation—should Harvard fail to comply, nor does the complaint allege the specific failure identified. This is required under § 42.108(d), and this failure is dispositive at this stage.

This is a limited pleading-stage conclusion. I do not find, as a historical fact, that the Assistant Attorney General never made the determination, or that DOJ's demand is substantively invalid. I conclude instead that the asserted satisfaction of these pre-enforcement requirements is not adequately supported by the procedural facts on which the complaint relies. The Government may be able to identify a qualifying determination or cure the procedural deficiency, but it has not supplied a sufficient basis for the judicial relief currently sought.

### C. <u>The Education proceedings</u>

Education must be evaluated independently. Its September 19, 2025 letter identified denial of access and threatened initiation of an enforcement process; its March 23, 2026 letter identified administrative proceedings or referral for judicial enforcement. [Doc. No. 27 at ¶¶ 61–62]. The Government contends that the first letter provided the necessary notice and that the second constituted an additional attempt to persuade compliance, after more than ten days had elapsed. [Doc. No. 34 at 18–19]. Harvard answers that the first letter did not identify the action ultimately to be taken and that the second letter was not followed by the additional efforts contemplated by 34 C.F.R. § 100.8(d)(3). [Doc. No. 35 at 5–6].

The Government's reliance on the passage of time between the two letters does not, by itself, establish satisfaction of the regulation. The provision couples timing with additional efforts to persuade the recipient to comply. Nor is it sufficient simply to label the March letter a final effort without addressing the agency's own sequence of notice, further persuasion, and referral. Conversely, I do not hold that a recipient is entitled to unlimited negotiations after each communication or that every departure from internal processing guidance necessarily requires dismissal. The pertinent question is satisfaction of the binding regulation, considered in light of the alleged notices and conduct.

The Government also suggests that further negotiations would have been futile because DOJ litigation was already pending. [Doc. No. 34 at 19 n.2]. Futility cannot be assumed merely because one department has sued on a related demand; the regulatory requirement governs Education's own enforcement course. On the allegations and incorporated sequence identified here, the Government has not adequately shown that Education fulfilled the additional procedural steps required before referral for judicial enforcement. This conclusion does not prevent Education from proceeding after complying with those steps.

**D. <u>Remaining arguments and the contractual claim</u>**

Because I resolve this action on a threshold procedural ground, I do not decide whether the information requests are overbroad or insufficiently relevant, whether the Government acted for an improper or retaliatory purpose, or whether a stay would otherwise be appropriate pending *Massachusetts v. Department of Education*, No. 26-cv-11229. Those questions remain open. Nothing in this decision converts the Government's request for information into an accusation of present discrimination or resolves Harvard's underlying Title VI compliance.

The separate breach-of-contract count requires explanation. The Government alleges that Harvard agreed, through federal funding and program-participation arrangements, to follow Title VI and its regulations, and that failure to provide the requested data breached those agreements. [Doc. No. 27 at ¶¶ 79–81]; [Doc. No. 34 at 23–24]. A contract claim does not fail automatically merely because it involves the same factual dispute as a statutory claim. Here, however, as pleaded, the asserted contractual duty is the duty to provide access under the Title VI regulatory framework; the Government does not identify a distinct contractual information obligation or an independent contractual enforcement process that would avoid the disputed statutory safeguards. Moreover, DOJ's regulation expressly includes proceedings to enforce assurances and contractual undertakings within the enforcement methods governed by § 42.108. I therefore will not permit the same information demand to proceed on this pleaded contract theory while the necessary pre-enforcement steps remain inadequately established. This dismissal is also without prejudice to a properly supported contractual theory.

**E. <u>Nature of the dismissal</u>**

The deficiency identified here concerns the basis for obtaining judicial enforcement at this time, not the subject-matter jurisdiction of the Court and not an adjudication of Harvard's entitlement to withhold otherwise properly requested records. I do not characterize the controversy as constitutionally unripe, nor do I hold that post-suit willingness to negotiate makes an action nonjusticiable. Rather, the amended complaint and the properly considered pre-suit record do not adequately support relief under the particular pre-enforcement framework on which the United States relies.

Because the deficiency may be cured by additional administrative steps or by an adequately supported pleading identifying compliance with the applicable prerequisites, dismissal without

prejudice is appropriate. Whether a later action rests on steps already taken or steps taken after this dismissal is a matter for examination on that action's record.

## IV. CONCLUSION

For these reasons, Harvard's motion to dismiss, [Doc. No. 31], is GRANTED without prejudice. The alternative request for a stay is DENIED as moot. No finding is made concerning the ultimate enforceability or permissible scope of any properly issued demand for admissions information.

SO ORDERED.

/s/ Myong J. Joun
United States District Judge